BLAKE, TRUSTEE IN BANKRUPTCY, *v.* OPENHYM.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 71.  Submitted January 11, 1910.—Decided February 12, 1910.

The judgment in this case that the vendor of goods sold to the bankrupt had a right to, and did, rescind the contract of sale on the ground that the goods were obtained by the bankrupt's fraud, and that the rescission was seasonably made on that ground, involves no provision of the bankruptcy law, but depends on principles of general law, and an appeal will not lie to this court from the judgment of the Circuit Court of Appeals. *Chapman* v. *Bowen,* 207 U. S. 89.

Where, after writ of replevin, the state court turns the goods over to the receiver, who so receives them, on the express condition that he assume the liabilities incurred in that court which has held that the liability under the re-delivery bond was incurred for benefit of the estate, no provision of the bankruptcy act is involved that would make the decision reviewable in this court on writ of error.

Where, after replevin, the paramount authority of the bankruptcy court is conceded and the replevin suit is considered only as evidence of rescission and identification of goods, no provision of the bankruptcy law or jurisdiction of the bankruptcy court is involved on which a writ of error from, or an appeal to, this court can be based. 157 Fed. Rep. 536, affirmed.

The facts are stated in the opinion.

Mr. *Alexander New* and Mr. *Edwin A. Krauthoff*, with whom Mr. *J. V. C. Karnes*, Mr. *Samuel Feller*, and Mr. *Arthur Miller* were on the brief, for appellant:

Under the bankruptcy law of 1867 this court assumed jurisdiction, *inter alia*, of the following cases on writs of error to state courts: *Forsythe* v. *Vehmeyer*, 177 U. S. 177; *Sharpe* v. *Doyle*, 102 U. S. 686; *Factors' &c. Co.* v. *Murphy*, 111 U. S. 738, 741; *Mays* v. *Fritton*, 131 U. S. cxiv; *Dushane* v. *Beall*, 161 U. S. 513, 518; *Williams* v. *Heard*, 140 U. S. 529; *Traer* v. *Clews*, 115 U. S. 528, 533, 534; *New Orleans &c. R. R. Co.* v. *Delamore*, 114 U. S. 501, 506; *Palmer* v. *Hussey*, 119 U. S. 96; *Hennequin* v. *Clews*, 111 U. S. 676.

Under the bankruptcy law of 1898, this court has assumed jurisdiction in the following cases, coming to this court under the provision of § 25b, from the Circuit Court of Appeals: *Pirie* v. *Chicago Title & Trust Co.*, 182 U. S. 438; *Pickens* v. *Roy*, 187 U. S. 177; *Page* v. *Edmunds*, 187 U. S. 596; *Jaquith* v. *Alden*, 189 U. S. 78; *New York Co. Nat. Bank* v. *Massey*, 192 U. S. 138; *Hewit* v. *Berlin Mach. Wks.*, 194 U. S. 296; *Western Tie & Timber Co.* v. *Brown*, 196 U. S. 502; *Whitney* v. *Dresser*, 200 U. S. 532; *York Mfg. Co.* v. *Cassell*, 201 U. S. 344; *Conboy* v. *First Nat. Bank*, 203 U. S. 141; *New Jersey* v. *Anderson*, 203 U. S. 483; *Hiscock* v. *Varick Bank*, 206 U. S. 28; *Gazlay* v. *Williams*, 210 U. S. 41.

Under the bankruptcy law of 1898, the following cases have been reviewed by this court on writ of error to a state court: *Dunbar* v. *Dunbar*, 190 U. S. 340; *Kean* v. *Calumet Canal*, 190 U. S. 452; *Tinker* v. *Colwell*, 193 U. S. 473; *Crawford* v. *Burke*, 195 U. S. 176; *Kaufman* v. *Tredway*, 195 U. S.

271; *Birkett* v. *Columbia Bank*, 195 U. S. 345; *Cramer* v. *Wilson*, 195 U. S. 408; *Bullis* v. *O'Beirne*, 195 U. S. 606; *Wetmore* v. *Markoe*, 196 U. S. 68; *First Nat. Bank* v. *Lasater*, 196 U. S. 115; *Thompson* v. *Fairbanks*, 198 U. S. 516; *Humphrey* v. *Tatman*, 198 U. S. 91; *Hammond* v. *Whitredge*, 204 U. S. 538.

An examination of the opinion in the Circuit Court of Appeals (157 Fed. Rep. 536), shows that the result reached depended upon the force and effect given to the action in replevin, which was instituted after the petition in bankruptcy was instituted; in other words, the question in the case was as to the force and effect of a proceeding in bankruptcy followed by a subsequent petition in replevin. This clearly presents a Federal question.

The authority relied on by the appellees in their motion to dismiss has no bearing on the question presented in the case at bar.

Since the bankruptcy law was enacted in 1898, *Chapman* v. *Bowen*, 207 U. S. 89, is the only case in which this court has declined to assume jurisdiction on an appeal or a writ of error arising under the bankruptcy law:

*Mr. Benjamin N. Cardozo, Mr. T. J. Ringolsky, Mr. Morris J. Hirsch* and *Mr. David L. White,* for appellees:

This court will not retain jurisdiction of this case on this appeal, as the appeal was prayed for and allowed under § 25b of the bankruptcy act of July 1, 1898, and the record does not show that such questions were involved in the decision of the case by the Court of Appeals as are necessary in order to give jurisdiction to the Supreme Court of the United States on appeal under § 25b. *Chapman* v. *Bowen*, 207 U. S. 89.

Mr. Justice McKenna delivered the opinion of the court.

This appeal was taken to review the decree of the Circuit Court of Appeals reversing the disallowance of a debt due to

Openhym & Sons as a preferential claim against the estate of Walkeen-Lewis Millinery Company (we shall call it the millinery company).

A motion to dismiss is made on the ground that the question involved is not one which could be brought here on writ of error from the highest court of a State, and that no Justice of this court has certified that a determination of the question is essential to a uniform construction of the bankrupt act, throughout the United States.

The facts, which we condense somewhat from the findings of the Court of Appeals, are, that the millinery company, then being in the millinery business at Kansas City, Missouri, obtained, by false representations of its liabilities, goods of the value of three thousand one hundred and twenty-five dollars and seventy cents from Openhym & Sons of New York city. Subsequently, a suit was brought against the millinery company by another creditor and a receiver was appointed of all its property. The receiver of the property forthwith took possession, and under the orders of the court continued its sale. A few days afterwards certain other creditors of the millinery company filed a petition in the District Court of the Western District of Missouri to have the company declared a bankrupt. Four days later the company admitted its insolvency and consented that it be declared a bankrupt.

Openhym & Sons, the appellees, asserting that their goods had been obtained from them by the millinery company by false representations of its solvency, demanded possession of the goods from the state court's receiver. Possession was refused, and Openhym & Sons, having obtained from the state court permission to do so, brought an action of replevin against the receiver and the millinery company. "Process was duly served on both defendants. In the execution of the replevin writ but $2,582.80 worth of the goods obtained from Openhym & Sons were found. The sheriff, in executing the writ, separated the goods so found from the remainder of the

stock then in possession of the state court receiver, and took them into his own possession. The receiver thereupon gave a re-delivery bond, resumed possession of the goods, put them back into the stock, and continued sales therefrom."

On September 23, 1905, the millinery company was adjudged a bankrupt. Before the date of the adjudication no receiver had been appointed by the District Court, and no order had been made affecting the property in the possession of the state court or the continuance of the sales thereof by the state court receiver. On the day of the adjudication of bankruptcy Daniel F. Blake, appellant, was appointed receiver in bankruptcy and was directed to apply to the state court for an order on its receiver for the possession of the property. He was further directed that before taking possession, he should request the state court to fix and determine the liabilities which its own receiver had incurred for the benefit of the estate. "The order of direction to the receiver in bankruptcy contained this clause: 'The liabilities incurred by the said receiver appointed by the state court shall be assumed and paid by the receiver herein.' "

On September 25, 1905, the state court stated the liabilities incurred by its receiver, and in addition thereto recited the proceedings in the replevin action brought by Openhym & Sons, and found that whatever liability had been incurred under the re-delivery bond had been incurred for the benefit of the estate. The court then ordered the delivery of the property to the receiver in bankruptcy upon the conditions that the latter should assume and pay the liabilities recited and the liability arising under the re-delivery bond. It was not shown what part of the goods in controversy actually passed into the possession of the receiver in bankruptcy, but it was shown that all of the stock remaining unsold, and all of the proceeds of sales by the state court receiver, largely in the form of customers' accounts, were, less expense of conducting the business, turned over to the receiver in bankruptcy.

October 2, 1905, the receiver in bankruptcy sold all of the property of the millinery company; on the thirteenth the receiver was selected as trustee; on the twenty-seventh the District Court ruled Openhym & Sons to show cause why they should not be enjoined from prosecuting the action of replevin and temporarily . enjoined them from doing so; December 1 the temporary injunction was made permanent. .

On December 10, 1905, a dividend upon the claims against the estate of the millinery company was declared, but . its payment left the greater portion of the estate in the hands of the trustee. Up to that time Openhym & Sons had not intervened and presented their claim for preferential payment, but this fact had no effect upon the declaration of the dividend and no creditor was prejudiced thereby.

December 21, 1905, Openhym & Sons intervened and presented their claim for $2,582.80 as a preferred one. On March 24, 1906, it was found by the referee to be entitled to be allowed as such. Upon petition for review, the District Court reversed the finding. Upon appeal the Circuit Court of Appeals substantially found the above facts and reversed the decree of the District Court. 157 Fed. Rep. 536.

The conclusions of law of the Circuit Court of Appeals were as follows:

"1. There were sufficient grounds for a rescission of the sale by Openhym & Sons, the right of rescission was seasonably asserted, and the right was not impaired or destroyed by the commencement of bankruptcy proceedings against the vendee who obtained the goods by fraud. The receiver and trustee in bankruptcy had no greater right or title to the goods in controversy than the bankrupt had.

"2. It was competent for the bankruptcy court to permit the prosecution of the replevin action in the state court for the recovery of the goods. The continuance of such prosecution was lawful up to the time it was forbidden by the injunction of the bankruptcy court. The commencement and prosecution of that action, though subsequently enjoined, was avail-

able to Openhym & Sons as an act of rescission, and the proceedings therein could properly be resorted to in ascertaining what part of the goods sued for was in the possession of the state court and afterwards with proceeds of sales went into the possession of the bankruptcy court.

"3. There was no such delay by Openhym & Sons in intervening in the bankruptcy proceedings as estopped them from asserting their right to a preferential claim for the value of their goods.

"4. Openhym & Sons are entitled to an order that the trustee pay their claim out of funds in his hands before making further payments to general creditors."

The contention of appellee upon the motion is that the bankruptcy law limits the right of appeal to two classes of cases, in neither of which, it is further contended, the case at bar falls: (1) where the amount in controversy exceeds a thousand dollars and the question involved is one that might have been taken on appeal or writ of error from the highest court of a State to the Supreme Court of the United States; (2) where a Justice of the Supreme Court of the United States shall certify that the determination of the question involved is essential to a uniform construction of the act throughout the United States.

The consideration of the second ground we can immediately dismiss, as there is no such certificate. Of the other, or first ground, it is urged that *Chapman* v. *Bowen*, 207 U. S. 89, is decisive. In that case the facts were that there was borrowed from Bowen, on two different occasions, the sum of five thousand dollars, for which two promissory notes were given, signed by the firm of A. McCoy & Company and by the individual names of Alfred McCoy and Thomas McCoy, the proceeds of the transactions going into the partnership business. The firm and the individuals became bankrupt, and the notes were presented as claims against the firm and allowed to the extent of thirty per cent. A claim was presented for the balance against the estate of Alfred McCoy, and dis-

allowed by the referee, whose decision was affirmed by the
District Court. The decision was reversed by the Circuit
Court of Appeals. *In re McCoy*, 150 Fed. Rep. 106. An
appeal was allowed to this court by a judge of the Circuit
Court of Appeals, which, on motion, was dismissed, on the
ground that a writ of error from the highest court of the
State to this court could not be maintained, because no
validity of a treaty or statute of, or an authority exercised
under, the United States, was drawn in question; nor the
validity of a statute of, or any authority exercised under,
any State, on the ground of repugnancy to the Constitution,
treaties or laws of the United States; nor was any treaty,
right, privilege or immunity claimed under the Constitution
or any treaty or statute or commission held or authority
exercised under the United States, and decided against it.
It was further said that "the decision below proceeded on
well-settled principles of general law, broad enough to sustain
it without reference to provisions of the bankruptcy act."

We think that case controls this, and that the cases cited
by appellant, of which this court took jurisdiction, are not
apposite. The determining facts in the case at bar are that
the goods were obtained by the millinery company by fraud,
and that the sale was seasonably rescinded on that ground.
In the decision of this there was involved no provision of the
bankruptcy law. Nor is any provision of the bankruptcy law
involved in the consideration of the question whether the
goods turned over by the state court to the receiver in bank-
ruptcy could be identified as the goods obtained from Open-
hym & Sons. Surely, as decided by the Court of Appeals, the
proceedings in the state court "could properly be resorted
to in ascertaining what part of the goods sued for was in the
possession of the state court, and afterwards what proceeds
of sales went into possession of the bankruptcy court." To
these facts must be added the important one that the goods
were ordered by the state court to be delivered to the receiver
in bankruptcy upon the express condition, and they were

received by him subject to the condition, that he should assume and pay the liabilities incurred in that court, that court finding "that whatever liability was incurred under the re-delivery bond was incurred for the benefit of the estate."

It was from these facts that the Court of Appeals concluded that Openhym & Sons were "entitled to an order that the trustee pay their claims out of funds in his hands before making further payments to general creditors." In this conclusion we cannot see that any provision of the bankruptcy law was involved, so that if the decision had been made by a state court it would have been reviewable here on writ of error.

It is the contention of appellant, however, that the writ of replevin brought by Openhym & Sons and the levy under it "were unlawful and unauthorized acts," and that Openhym & Sons "could not, and did not, conserve any rights thereby." And, further, the appellant says, "it will be observed at the outset that this question goes directly to the jurisdiction of the bankruptcy court over the *res* of the bankrupt after the filing of the involuntary petition in bankruptcy." Putting it another way, appellant says that "the question in the case is as to the force and effect of a proceeding in bankruptcy followed by a subsequent petition in replevin." And, it is insisted, that the result reached by the Court of Appeals "depended upon the force and effect given to the action in replevin," and that, therefore, a Federal question is presented. This, however, proceeds from a misapprehension of the opinion of the Court of Appeals. The paramount jurisdiction of the bankruptcy court was conceded. The replevin suit was considered as showing the purpose of Openhym & Sons to rescind the sale of the goods and as a means of their identification, as we have already pointed out. In holding it competent for those purposes we cannot see how any provision of the bankruptcy law was involved.

The motion to dismiss must therefore be granted.

*So ordered.*