REID, MURDOCK & Co., Appellants, v. LLOYD & MOORMAN, Respondents.

Kansas City Court of Appeals, January 2, 1893.

1. **Definitions:** SOLVENCY. Solvency consists not only of the present ability of a debtor to pay his debts, but of his being in such condition of his means that payment may be enforced.

2. **Sales:** INTENTION AND ABILITY TO PAY: JURY QUESTION. A knowledge on the part of the purchaser at the time of making the purchase that he will not be able to pay for the goods is equal to an intent not to pay for them, and under the facts of this case the question of such intent should be submitted to the jury.

3. ———: FRAUD: TITLE: RULE AS TO SUBSEQUENT VENDEE. Marr & Shelton bought of plaintiffs a bill of goods when insolvent, but representing themselves as solvent. They shortly afterwards sold to the defendants. *Held*, if they bought said goods without intending to pay for the same, then no title passed to them which they could pass to defendants unless such goods were sold and delivered to the defendants for a valuable consideration, and in the usual and customary manner of making such transactions without any knowledge of Marr & Shelton's fraud, or of such facts as would put a man of common prudence on his inquiry.

4. ———: ———: SUBSEQUENT PURCHASER: PROCEDURE. Marr & Shelton purchased goods of plaintiffs without intending to pay for them, and sold them to defendants, of whom plaintiffs replevied them. *Held*, after plaintiffs' evidence showed the intention not to pay, the burden of proof was cast upon the defendants' to show in a general way that they purchased in good faith, and for value, after which plaintiffs, should show circumstances warranting the inference that defendants knew of the fraud or of facts to put them on inquiry.

5. ———: ———: ———: JURY QUESTION. Where a subsequent vendee of such fraudulent purchaser does not purchase in the usual and customary manner, *e. g.*, without taking an inventory, and knows his immediate vendors were embarrassed and compelled to close up their business, there is sufficient to put him on his inquiry, and to send the case to the jury.

*Appeal from the Livingston Circuit Court.*—HON. E. J. BROADUS, Judge.

REVERSED AND REMANDED.

*Scott J. Miller* and *Frank Sheetz*, for appellants.

(1) Where one purchases goods intending never to pay for them, the sale is voidable at the election of the seller, and, as between the parties, property in the goods does not pass. Where a third party, with notice of facts which would put an ordinarily prudent man on inquiry, purchases the goods from the fraudulent vendee, the original owner may recover them, or their value from such third parties. *Thomas v. Freligh*, 9 Mo. App. 151; *Elsass v. Harrington*, 28 Mo. App. 300; *Price*

*v. Lederer*, 33 Mo. App. 426; *Leedom v. Fruit Co.*, 38 Mo. App. 425. (2) Where a merchant makes a purchase shortly before failure, and at a time when his business is hopelessly swamped, it must be left to a jury to say whether he intended to pay for the goods. A knowledge on the part of a purchaser at the time of making the purchase, that he will not be able to pay for the goods, is tantamount to an intent not to pay for them. *Elsass v. Harrington*, 28 Mo. App. 304. There was sufficient evidence showing that Marr & Shelton never intended to pay for the goods, and that makes a *prima facie* case. *Price v. Lederer*, 33 Mo. Mo. App. 434. And casts the burden of proof on the defendants to show that they bought in good faith for value, and in the ordinary course of dealings, after which it would be incumbent on the plaintiffs to show a state of circumstances warranting the conclusion that the defendants either had knowledge of the intent with which the goods were purchased by Marr & Shelton or knowledge of facts sufficient to put an ordinarily prudent and sagacious man upon inquiry in respect to that matter. *Leedom v. Fruit Co.*, 38 Mo. App. 438. The court erred in taking the case from the jury, and the judgment should be reversed.

*Lewis A. Chapman*, for respondents.

(1) The court committed no error in sustaining the demurrer to the testimony of the plaintiffs. There was no evidence that Marr & Shelton ever purchased any of the goods taken by the sheriff on the writ, not intending to pay for them. There is no evidence even of any of the goods taken having been purchased at the last sale. There was no evidence even of insolvency of Marr & Shelton. "The legal sufficiency of the evidence was for the court to determine. It is the

province of the court to determine the legal effect of the evidence." *Harris v. Woody*, 9 Mo. 113; *Boland v. Railroad*, 36 Mo. 484–491; *Meyer v. Railroad*, 40 Mo. 151; *Clark v. Railroad*, 202–217; *Charles v. Patch*, 87 Mo. 450; *Maher v. Railroad*, 64 Mo. 267.

SMITH, P. J.—Action, replevin to recover the possession of certain articles of merchandise. Answer, general denial and claim of property. At the trial there was a demurrer to the plaintiffs' evidence interposed and by the court sustained, and from the judgment thereon the plaintiffs appeal. We are, therefore, called upon to review the action of the court upon the demurrer.

The disclosure of facts made by the evidence is something like this: The plaintiffs were wholesale grocer merchants at Chicago, and Marr & Shelton were retail dealers at Brookfield in this state. The traveling salesman, Cloud, of plaintiffs, had been in the habit of calling every two weeks on Marr & Shelton for about nine months prior to the last sale made by him to them, and taking from them orders for such goods as they would need which would be sent on to plaintiffs and by them filled and shipped. The amount of these sales was something like $900 outside of the amount of the last bill sold. At the date of the last sale made by Cloud, he had a conversation with Shelton, one of the firm of Marr & Shelton, during which the latter showed the former a letter he had received from the plaintiffs in answer to one written by Marr & Shelton asking an extension of the time of the payment of their indebtedness. In this conversation Shelton represented to Cloud that his firm did not owe more than $800 or $900, and that it did not owe but very little outside of the amount due plaintiffs.

It does not appear what goods were comprised in the last sale made, nor does the amount thereof any-

where appear. None of the goods described in the petition and taken from defendants' possession, unless, possibly, a few cases of canned tomatoes and corn, were identified as a part of the last bill sold to Marr & Shelton. They were possibly some of the goods that had been previously sold by plaintiffs to them. About ten days after Marr & Shelton had given plaintiffs their last order for goods, the former sold out their entire stock to the defendants for $1,000 in cash. This seems to have been about a fair cash value for the stock. Marr & Shelton both at the time they made their last purchase of plaintiffs, and at the time they sold out to defendants, were indebted something like $2,500. There was, however, no evidence that they had been sued or that their pecuniary condition was generally known in the place where they did business.

It thus appears that Marr & Shelton were hopelessly insolvent at the time they purchased their last bill of goods of plaintiffs as well as at the time they sold out to defendants. Solvency consists not only of the present ability of a debtor to pay his debts, but of his being in such condition of his means that payment may be enforced by law. *McDonald v. Cash & Hainds*, 45 Mo. App. 66; *Eddy v. Baldwin*, 32 Mo. 360; *State ex rel. v. Koontz*, 83 Mo. 323. Tested according to this rule it is obvious enough that Marr & Shelton were insolvent at the time of the two transactions just stated. They must have known when they made their false representations as to their indebtedness to plaintiffs' agent that they could not pay for the goods they were ordering. They knew too that they could not continue business. And under these circumstances it should have been left to the jury to say whether they ever intended to pay for the goods. A knowledge on the part of the purchaser at the time of making the purchase that he

will not be able to pay for the goods is equal to an intent not to pay for them.

It is true that as a general rule the mere fact of insolvency of the vendee, and that he knew the same, is not sufficient of itself to take the case to the jury, unless the insolvency is so gross that the evidence of it is known to the vendee, would authorize the inference that he never intended to pay for the goods, or unless there be substantial evidence of the other circumstances to support the inference of such fraudulent intent. *Elsass v. Harrington*, 28 Mo. App. 305; *Leedom v. Ward, etc., Co.*, 38 Mo. App. 425; *Thomas v. Freligh*, 9 Mo. App. 151; *Price v. Lederer*, 33 Mo. App. 425. Upon this proposition we think the evidence was quite sufficient to have justified the submission of the case to the jury. If Marr & Shelton obtained of plaintiffs their last bill of goods by false representations as to their circumstances, and without intending to pay for the same, then no title passed from plaintiffs to them which they could pass to defendants, unless such goods were sold and delivered to defendants for a valuable consideration, and in the usual and customary manner of making such transactions without any knowledge on the latter's part of the fraud and misrepresentation of Marr & Shelton to plaintiffs, and without such facts coming to their knowledge as would put a man of common sagacity, care and prudence on his inquiry. The evidence being, as we have already stated, sufficient to warrant the inference that Marr & Shelton purchased the goods without intending to pay for them, the burden of proof was cast upon defendants to show in a general way that they purchased the goods in good faith and for value, after which it would have been incumbent on the plaintiffs to show a state of circumstances warranting the inference that the defendants either had knowledge of the intent with which the goods were purchased or a

knowledge of facts sufficient to put an ordinarily prudent and sagacious man upon his inquiry. The plaintiffs, however, in such case may relieve the defendants from this burden by a collection of facts which their own evidence tends to establish.

We do not think that the plaintiffs' evidence in a general way tended to show that the purchase made by the defendants was for value, in good faith, and as is usual and customary in transactions of the kind. It was disclosed that the defendants took no inventory of the stock of goods they were purchasing, but purchased them in a lump—merely approximating the value by mere conjecture. Besides this it was shown that the defendants knew that Marr & Shelton were embarrassed and compelled to close up their business. These facts were sufficient to warrant the conclusion that the defendants had knowledge of the intent with which the goods were purchased or, if not, they were at least sufficient to put them on their inquiry in respect to the matter. The evidence adduced by plaintiffs made a *prima facie* case and clearly entitled them to go to the jury, at least as to the cases of canned tomatoes and corn described in their petition. It follows that the court erred in withdrawing the case from the jury.

As to the error complained of in respect to the judgment, it is sufficient to say that the irregularity, if such it be, was cured by the agreement of the parties, and besides it is of no consequence since we shall reverse the judgment for the reasons already indicated.

The judgment will be reversed and the cause remanded. All concur.