In the Matter of PFA FARMERS MAR-
KET ASSOCIATION, Bankrupt.

BASSETT FURNITURE INDUSTRIES,
INC., Appellant,

v.

William A. WEAR, as Trustee in
bankruptcy for the above named
bankrupt, Appellee.

No. 77–1908.

United States Court of Appeals,
Eighth Circuit.

Submitted March 17, 1978.

Decided Aug. 29, 1978.

Rehearing and Rehearing En Banc
Denied Sept. 19, 1978.

Henley, Circuit Judge, filed an opinion
concurring in the result.

Ross, Circuit Judge, filed a dissenting
opinion.

Turner White, III, of White, Dickey & Allemann, Springfield, Mo., for appellant; J. Bruce McCurry, Springfield, Mo., on brief.

William A. Wear of Wear & Wear, Springfield, Mo., for appellee.

Before ROSS and HENLEY, Circuit Judges, and LARSON,* Senior District Judge.

LARSON, Senior District Judge.

This appeal arises from the denial of a petition for reclamation in bankruptcy court. The district court affirmed. We reverse.

The facts of the case have been stipulated. In November and December, 1976, Bassett Furniture Industries, Inc. shipped furniture to PFA Farmers Market Association. PFA refused to accept the tendered goods and they were stored in a warehouse. On April 11, 1977, Bassett again shipped the goods to PFA, which this time accepted the goods. Bassett sold the goods to PFA on an open credit account. Bassett did not know that PFA was insolvent within the meaning of 11 U.S.C. § 1(19) (1970) at the time of delivery. On April 18, 1977, PFA filed a petition under Chapter XI of the Bankruptcy Act, 11 U.S.C. §§ 701–799 (1970). On April 20, Bassett learned of PFA's insolvency and immediately sent a telegram to PFA demanding rescission under Uniform Commercial Code § 2–702.[1]

---

* The Honorable Earl R. Larson, Senior District Judge for the District of Minnesota, sitting by designation.

1. Missouri law governs issues of state law in this case. The Missouri Uniform Commercial Code is found in Chapter 400 of the Revised Statutes of Missouri (1969). The provisions with which we will primarily be concerned are subsections (2) and (3) of § 2–702, which are set forth below:

(2) Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within ten days after the receipt, but if misrepresentation of solvency has been made to the particular seller in writing within three months before delivery the ten day limitation does not apply. Except as provided in this subsection the seller may not base a right to reclaim goods on the buyer's fraudulent or

After a receiver was appointed for PFA, Bassett filed its petition for reclamation. The bankruptcy judge denied the petition, holding that allowing reclamation would constitute an impermissible preference under § 60 of the Bankruptcy Act, 11 U.S.C. § 96 (1970), that § 2–702 of the Code conflicts with §§ 64 and 67(c)(1)(A) of the Bankruptcy Act, 11 U.S.C. §§ 104, 107(c)(1)(A) (1970), and that the trustee was entitled to the goods under § 70(c) of the Bankruptcy Act, 11 U.S.C. § 110(c). The district court rejected the first two grounds but affirmed on the basis of § 70 (c) and § 2–702.

■ The issue before us is whether a seller seeking to reclaim under § 2–702(2) is entitled to do so when the seller's demand follows the filing of a petition in bankruptcy. Under § 70(a) of the Bankruptcy Act, 11 U.S.C. § 110(a) (1970), the trustee acquires title to the bankrupt's property as of the filing of the petition. But the trustee's title is subject, generally speaking, to the contract defenses and equities to which the bankrupt's title was subject. *Collier on Bankruptcy,* ¶ 70.41[1] (14th ed. 1976). Under § 70(c) of the Bankruptcy Act, the trustee also acquires the rights of a hypothetical lien creditor who "could have obtained a lien by legal or equitable proceedings at the date of bankruptcy." The rights of this hypothetical lien creditor are to be determined by state law. *Collier on Bankruptcy, supra.*

If § 70(a) were the only applicable bankruptcy statute, the seller could reclaim because that section confers on the trustee no more than the bankrupt's rights under state law. Section 2–702(2) determines the relative rights of the seller and the bankrupt buyer:

> Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within ten days after the receipt . . . .[2]

---

innocent misrepresentation of solvency or of intent to pay.

(3) The seller's right to reclaim under subsection (2) is subject to the rights of a buyer in ordinary course or other good faith purchaser or lien creditor under this Article (Section 2–403). Successful reclamation of goods excludes all other remedies with respect to them.

In 1966, the Permanent Editorial Board recommended that the words "or lien creditor" be deleted from subsection (3) for reasons which will become apparent below. At last count, seventeen states had adopted the 1966 amendment. *See U.C.C. Rep. Ser. Dig., Supplement* at 72. Missouri has not adopted this amendment.

2. The pre-Code right of rescission was conditioned on actual proof of fraud; presumed fraud was insufficient. *O'Rieley v. Endicott-Johnson Corp.,* 297 F.2d 1, 3–4 (8th Cir. 1961). *But see* Kennedy, *The Trustee in Bankruptcy under the Uniform Commercial Code: Some Problems Suggested by Articles 2 and 9,* 14 Rutgers L.Rev. 518, 555–56 (1960). As a practical matter, many sellers were unable to establish the requisite proof of fraud. 4 *Collier on Bankruptcy,* ¶ 70.41[2]; *Note, In re Federal's Inc.: A New Way for the Trustee in Bankruptcy to Defeat a Reclaiming Seller,* 35 U.Pitt.L. Rev. 922, 923 (1974) (Pittsburgh Note). Confusion existed because of varying rules concerning sufficient showings of fraud. *See Collier on Bankruptcy* ¶ 70.41[1]; *Note, Bankruptcy*

*and Article Two of the Uniform Commercial Code: The Right to Recover the Goods Upon Insolvency,* 79 Harv.L.Rev. 598, 608 (1966).

In an effort to simplify and make uniform the seller's right, the Code has dispensed with proof of fraud. Upon proof that the buyer was insolvent at the time goods were delivered, a seller may now reclaim if it makes demand within ten days of delivery. The Official Comment to § 2–702(2) explains:

> Subsection (2) takes as its base line the proposition that any receipt of goods on credit by an insolvent buyer amounts to a tacit business misrepresentation of solvency and therefore is fraudulent as against the particular seller.

Hawkland viewed this presumption of fraud as particularly reasonable in view of the ten day limitation on timely demands: "[f]raud or gross misconduct is relatively easy to impute to the buyer" in a case in which the buyer's insolvency is so promptly discovered. Hawkland, *The Relative Rights of Lien Creditors and Defrauded Sellers—Amending the Uniform Commercial Code to Conform to the Kravitz Case,* 67 Com.L.J. 86 (1962). The ten day limit on demands may be avoided only if the buyer has furnished a written misrepresentation of solvency to the seller. In such a case the element of fraud is still easier to perceive. In the absence of a written misrepresentation, proof of fraud is unavailing to a seller who fails to comply with the ten day limit on demands. By the same token, it appears that it is no defense

The parties have stipulated that PFA, the bankrupt, was insolvent when it received the furniture from Bassett. Bassett discovered this and made demand for reclamation within ten days after PFA received the goods. Thus, as against PFA, Bassett would be entitled to reclamation. Similarly, under § 70(a), the trustee is also subject to Bassett's right of reclamation.

When the issue is analyzed under § 70(c), however, the result is far less clear. As noted above, we must look to state law for the rights of the trustee as hypothetical lien creditor. Subsection 3 of the Code § 2–702 provides:

> The seller's right to reclaim under subsection (2) is subject to the rights of a buyer in ordinary course or other good faith purchaser or lien creditor under this Article (Section 2–403). (emphasis added).

Interpretation of this subsection has confounded courts and commentators—the only consensus to be found is that there are numerous respectable, if somewhat unsatisfactory, readings of the quoted language.

In re Kravitz, 278 F.2d 820 (3d Cir. 1960), was the first case to touch on the relative rights of the reclaiming seller and the trustee in a state that had adopted § 2–702. The court stated that § 70(c) confers on the trustee the rights of the most favored creditor under state law. Looking to the relevant state law, the court continued:

> We think that the Pennsylvania law gives certain lien creditors [—those having levied on a debt contracted subsequent to the voidable sale—] a higher claim than that of a defrauded seller and that such precedent governs this case even assuming the seller to have been defrauded in fact. 278 F.2d at 822.

This conclusion was drawn from pre-Code cases. Though an early version of the Code had been adopted by Pennsylvania, the court concluded that it did not displace pre-Code law giving lien creditors priority over reclaiming sellers.

In In re Mel Golde Shoes, Inc., 403 F.2d 658 (6th Cir. 1968), the court ruled that § 2–702 also does not "displace" state law giving sellers priority over levying creditors. In that case creditors who had extended credit before the seller delivered goods to the insolvent buyer levied attachments on the buyer's inventory the day after delivery. They opposed the seller's subsequent timely demand under § 2–702(2). The court rejected the creditors' argument that § 9–301(b) governs the rights of lien creditors against reclaiming sellers and relied on § 1–103 for the idea that the state common law governed.[3] The court reviewed relevant Kentucky cases and determined that the seller's right to reclaim was superior to the rights of attaching creditors.

The Sixth Circuit reaffirmed the Mel Golde analysis in In Re Federal's Inc., 553 F.2d 509 (1977). See also In re Royalty Homes, 8 U.C.C.Rep.Ser. 61 (Ref.D., E.D. Tenn.1970). In Federal's, a seller sought to recover merchandise delivered to an insolvent buyer on credit from a bankruptcy trustee. The Sixth Circuit again looked to pre-existing state law for the rights of the seller against the trustee as lien creditor. The district court had found no Michigan cases involving the competing claims of a buyer's judicial lien creditor and a reclaiming seller, but some Michigan cases permitted lien creditors who had advanced their consideration after the seller had delivered the goods to the insolvent buyer to prevail. On the basis of these cases, the district court reached the same result as the Third Circuit had in Kravitz. The Court of Ap-

---

to § 2–702(2) that an insolvent buyer received goods without fraud and with intent to pay.

**3.** Section 1–103 provides in part:
Unless displaced by the particular provisions of this Act, the principles of law and equity, including . . . the law relative to . . fraud, . . . bankruptcy, or other validating or invalidating cause shall supplement its provisions.

It should be noted that Kravitz was decided under the 1952 version of the Code, which did not contain language making the seller's right to reclaim under § 2–702(2) exclusive. The second sentence of § 2–702(2) was added to the 1957 version and has remained in the Code since then.

peals reversed, disagreeing with the district court analysis on two grounds. First, the Sixth Circuit expressed its view that a trustee does not assume the rights of an ideal lien creditor as *Kravitz* had suggested; rather, the trustee becomes "about the lowest form of creditor." 553 F.2d at 514. *See* Braucher, *Reclamation of Goods from a Fraudulent Buyer*, 65 Mich.L.Rev. 1281, 1293–94 (1967); Kennedy, *The Interest of a Reclaiming Seller Under Article 2 of the Code*, 30 Bus.Law. 833, 840–41 (1975). Second, the Michigan cases the district court relied on involved consensual liens granted by the bankrupt, not judicial liens. Section 70(c) grants to the trustee only the rights of creditors who could obtain liens by legal proceedings. In short, the trustee did not stand in the shoes of those creditors allowed to cut off a seller's right of reclamation.

We have discovered a number of pre-Code Missouri cases dealing with the rights of sellers as against creditors. One case, *Steinwender v. Creath*, 44 Mo.App. 356 (1891), suggested that any attaching creditor may cut off a defrauded seller's right to rescind. That case appears, however, to have confused the right to reclaim for fraud with an unpaid vendor's lien, which was regulated by statute. *See Strauss v. Rothan*, 102 Mo. 261, 14 S.W. 940 (1890). The general Missouri rule appears to have been the same as the Michigan rule. Those creditors who extended credit after the seller delivered goods and acquired a chattel mortgage without notice of the seller's right of reclamation could cut off the seller's right but those creditors who had extended credit before delivery of the goods could not. *See, e. g., Swafford Bros. Dry Goods Co. v. Jacobs*, 66 Mo.App. 362 (1896). *See also Goebel v. Troll*, 71 Mo.App. 123 (1897); *H. F. Watson Co. v. Borden*, 68 Mo.App. 567 (1897). We have discovered no Missouri cases involving a buyer's judicial lien creditor and a reclaiming seller. *See Comment, Bankruptcy—Reclamation and the Uniform Commercial Code*, 33 Mo.L. Rev. 262, 269 (1968).

Thus, if we were to adopt the *Kravitz* analysis, we would rule in favor of the

trustee because as "ideal" lien creditor, he could cut off the rights of Bassett under pre-Code Missouri law. If we were to adopt the *Federal's* analysis, we would rule in favor of Bassett because the trustee as the "lowest form of creditor" could not be presumed to have extended credit and obtained a judicial lien on the pertinent goods between the time of their delivery and the demand for their reclamation.

Both the *Kravitz* and *Federal's* analyses send the reader to pre-Code law. Pre-Code common law on the relative rights of reclaiming sellers as against lien creditors was neither uniform nor clear. *See* Bjornstad, *Reclamation of Goods by Unsecured Sellers in Bankruptcy Proceedings*, 24 Drake L.Rev. 357, 359 (1975); *Note, Bankruptcy and Article Two of the Uniform Commercial Code: The Right to Recover the Goods Upon Insolvency*, 79 Harv.L.Rev. 598, 608 (1966) (Harvard Note). Incorporating such common law into § 2–702(3) is not easily reconciled with the Code's policy of making commercial law simple and uniform. *See* § 1–102(2). And, though § 1–103 preserves common law principles unless displaced by the Code, "one should be most cautious in urging that article 2 is not a complete statement of the law of sales, particularly in the fairly common situation involving the rights of creditors versus the rights of sellers." Shanker, *A Reply to the Proposed Amendment of UCC Section 2–702(3): Another View of Lien Creditor's Rights vs. Rights of a Seller to an Insolvent*, 14 Case Wes.Res.L.Rev. 93, 96 (1962). *See also* R. Duesenberg & L. King, *Sales and Bulk Transfers under the Uniform Commercial Code*, § 13.03[4][ii] at 13–39. In fact, the language of § 2–702(3) makes the reclaiming seller's rights subject to the rights of the lien creditor "under this Article." But the Third and Sixth Circuits look for such rights only in pre-Code cases.

Commentators have proposed alternative interpretations of § 2–702(3) in an effort to find explicit direction within the Code. Shanker proposed that the language be read:

The seller's right to reclaim under subsection (2) is subject to the rights of a . . lien creditor [whose definition is that found] under this Article (Section 2–403). Shanker, *supra* at 98.

Thus, under this reading, an intervening bankruptcy petition would always cut off the seller's right to reclaim. Countryman tried a similar tack. He posited that the words "under this Article (Section 2–403)" modify only the rights of buyers in ordinary course or other good faith purchasers. He continued:

As to lien creditors, the provision would then simply say that the seller's right of reclamation is "subject to the rights of . . . a lien creditor," which could without strain be read to mean is "subject to the lien of a lien creditor." Countryman, *Buyers and Sellers of Goods in Bankruptcy*, 1 N.Mex.L.Rev. 435, 457 (1971).

These commentators argued that by eliminating proof of fraud as an element of reclamation, the Code changes the balance of equities that had favored the defrauded seller under pre-Code law. *See also* Bjornstad, *supra* at 363–64. They contended that the drafters intentionally reduced the seller's rights as against third parties.

The district court agreed with Shanker and Countryman that § 2–702(3) itself gives lien creditors priority. *See also In re Richardson Homes Corp.*, 18 U.C.C.Rep.Ser. 384 (Ref.D.N.D.Ind.1975); *In re Behring & Behring*, 5 U.C.C.Rep.Ser. 600 (Ref.D.N.D. Tex.1968); *In re Goodson Steel Corp.*, 10 U.C.C.Rep.Ser. 387 (Ref.D.S.D.Tex.1968).

Though the readings of both Shanker and Countryman are plausible, neither is any more satisfactory than the analyses of the Third and Sixth Circuits. Shanker's view is inconsistent with the language of § 2–403(4), which refers to the "rights" and not to the "definition" of lien creditors. *See* R. Duesenberg & L. King, *supra*. Country-

man's reading is somewhat more forced, for the phrase "under this Article (Section 2–403)," read naturally, does appear to modify the term "lien creditor." *See* Sebert, *The Seller's Right to Reclaim: Another Conflict Between the Uniform Commercial Code and the Bankruptcy Act?*, 52 Notre Dame Law. 219, 222 (1976). Of more importance, their readings make § 2–702(3) inconsistent with the policy expressed by the drafters of § 2–702 in the Official Comment, which is to expand the seller's right of reclamation.[4] Sellers seldom learn of a buyer's insolvency within ten days of a sale except through the institution of insolvency proceedings. Henson, *Reclamation Rights of Sellers Under Section 2–702*, 21 N.Y.L.F. 41, 52 (1975). If it is by then too late to reclaim, the § 2–702(2) right is a practical nullity. We do not believe the Code drafters intended such a limited scope to § 2–702(2) as the district court's reading of § 2–702(3) would require.

Shanker and Braucher both discussed another interpretation of § 2–702(3) which, so far as our research discloses, has not previously been adopted by any court. Section 2–702(3) directs the reader to look for the rights of lien creditors under Article 2. They suggest that that is an exclusive directive. The rights of a lien creditor against reclaiming sellers must be found, if at all, under Article 2 or in the Articles to which Article 2 cross references lead. *See* Braucher, *supra* at 1288–89; Shanker, *supra* at 98–99.

■ Shanker identified three Code sections which arguably confer rights on creditors as against reclaiming sellers. For instance, he suggested that a lien creditor is a purchaser for value under § 2–403. Shanker, *supra* at 101–02. From that it follows that a trustee has both the rights of a lien creditor and the rights of a purchaser for value and that an intervening trustee cuts off the seller's right of reclamation. But § 2–403(4) by its terms distinguishes lien

---

**4.** Though the modifications of the common law reclamation right produced by § 2–702(2) *do* not entirely favor the seller, thus calling into question the extent to which the Comment is consistent with the actual purpose of § 2–702(2), there is no indication that the drafters intended the *drastic limitation on the remedy* adopted by the district court. *See* Braucher, *supra.*

creditors from purchasers. Moreover, unlike the definition of purchasers in § 1–201(32), which indicates that purchasers acquire rights in voluntary transactions, the definition of lien creditors in § 9–301(3) suggests that lien creditors acquire rights through judicial and other involuntary proceedings. We conclude that a lien creditor is not included as a purchaser for value under § 2–403 and that the trustee acquires no rights as against a reclaiming seller from § 2–403 itself.

■ Shanker also suggested that most sales in which claims under § 2–702(2) arise may be "deemed" a "sale or return" situation within the meaning of § 2–326. Section 2–326(3) provides in part:

> Where goods are delivered to a person for sale and such person maintains a place of business at which he deals in goods of the kind involved, under a name other than the name of the person making delivery, then with respect to claims of creditors of the person conducting the business the goods are deemed to be on sale or return.

The significance of this is found in subsection (2) of § 2–326. So long as the goods remain in the buyer's possession, they are subject to the claims of the buyer's creditors. Shanker concluded that this section could be read to determine the respective rights of lien creditors and reclaiming sellers. Shanker, *Bankruptcy and Article 2 of the Uniform Commercial Code*, 40 Ref.J. 37, 42–43 (1966). Under his reading a seller could never reclaim after a creditor levied on the goods or, because the trustee acquires the status of a hypothetical creditor, after a petition had been filed. But we are skeptical of the application of § 2–326 to any situation other than consignment sales. *See* R. Duesenberg & L. King, *supra*, § 13.03[4][d][iv]. The title of the section clearly indicates the drafters' intent to deal with consignment sales. The language of § 2–326(3) reflects a distinction between consignment deliveries and ordinary sales

between sellers and buyers. We are unwilling to take liberties with the sense of § 2–326 to rectify difficulties in the interpretation of § 2–702. We conclude that § 2–326 has no application to our facts. *See also* Kennedy, *The Trustee in Bankruptcy under the Uniform Commercial Code: Some Problems Suggested by Articles 2 and 9*, 14 Rutgers L.Rev. 518, 551 n. 137 (1960).

■ Finally, Shanker developed an argument that the seller's right to reclaim is a security interest which, under § 9–301(1)(a), would be subordinated to the claim of "a person who becomes a lien creditor before the security interest is perfected." Shanker, *supra* at 102–06. *See also* Harvard Note, *supra* at 610. Shanker argued that the broad definition of "security interest" in § 1–201(37) as "an interest in personal property or fixtures which secures payment or performance of an obligation" could be construed to include the right of reclamation. It is widely felt, however, that a right to rescind under § 2–702 is distinguishable from a security interest. *See* Braucher, *supra* at 1290; Kennedy, *The Interest of a Reclaiming Seller under Article 2 of the Code*, 30 Bus.Law. 833, 835–36 (1975). *Cf. Guy Martin Buick, Inc. v. Colorado Springs National Bank*, 184 Colo. 166, 519 P.2d 354 (1974) (§ 2–507(2) is "a right to undo the transaction, not a right to 'secure' payment of the price as required by the definition of a 'security interest.'"). Sellers have never understood their reclamation right to be a security interest. R. Duesenberg & L. King, *supra*, § 13.03[4][d][ii] at pp. 13–29—13–32. While § 9–113 indicates that some security interests are created as a matter of law by Article 2, we find nothing in § 9–113 or its Official Comment to indicate that the § 2–702(2) right was classified as a security interest. With some uncertainty, we agree with *In re Mel Golde Shoes, supra* at 660, that § 2–702(2) creates something other than a security interest.[5]

---

5. In any case, labelling the seller's right under § 2–702(2) a security interest does not resolve the relative rights of a seller and a trustee. Security interests must be perfected if they are to prevail over the trustee-as-lien creditor. To perfect a security interest in goods, one must generally make a filing, § 9–302, or obtain possession of the goods, § 9–305. It is possible, however, that § 9–113 would relieve the seller of the filing requirement and permit perfection

Braucher proposed that levying creditors might be able to take advantage of two different factual situations. Goods sold under an actual "sale or return" contract and some goods held on consignment would be subject to claims of the buyer's creditors while in the buyer's possession. In addition,

> [t]he reference to section 2–403 and the further reference to Articles Six, Seven, and Nine could be given meaning with respect to lien creditors by, for example, section 9–301(1)(b), which subordinates a seller's unperfected security interest to the rights of a levying creditor of the buyer; a seller with such an interest would then not be permitted to mend his hold by reclaiming under section 2–702. Braucher, *supra* at 1288.

Precisely why levying creditors would have greater rights in those two situations than in the typical case is not explained, but the latter suggestion, at least, finds support in the Official Comment to the 1962 version of § 2–702, which is the version in effect in Missouri.[6] Neither of these two situations exists in this case.

Legislative history is not particularly enlightening but on the whole we think it cuts against analyses such as those of Shanker and Countryman who read into § 2–702(3) a radical change of the general rule that reclamation is appropriate despite the competing claims of creditors. An early version of § 2–702(2) expressly permitted reclamation after "a petition in bankruptcy or for receivership is filed by or against the buyer." *Revised Uniform Sales Act § 104 (Proposed Final Draft No. 1,* 1944). Later amendments deleting this language and establishing the present qualifier "[w]here the seller discovers the buyer to be insolvent" may have been viewed as mere simplifications.

The reference to "or lien creditor" was inserted into § 2–702(3) between the phrase "subject to the rights of a buyer in ordinary course or other *good faith purchaser*" and the phrase "under this Article (Section 2–403)" after 1951 without any published explanation. Braucher viewed this as "an insubstantial editorial change" and perceived nothing in the legislative history that suggested any weakening of the drafters' original intention "to authorize reclamation in bankruptcy in the circumstances defined in section 2–702." Braucher, *supra* at 1285–88.

Examining the probable intention of the Missouri legislature is appropriate, but adds little to our understanding of § 2–702(3). As we noted above, Missouri seems originally to have permitted creditors who acquired a chattel mortgage after delivery of goods to levy and cut off a seller's reclamation rights as against those goods. Early Missouri cases allowed defrauded sellers to reclaim notwithstanding the institution of bankruptcy proceedings. *See, e. g., William Openhym & Son v. Blake,* 157 F. 536 (8th Cir. 1907). *See also Blake v. Meadows,* 225 Mo. 1, 123 S.W. 868 (1909). But *Openhym* preceded the enactment of the Federal bankruptcy "strong-arm clause," which has become § 70(c), *see* 36 Stat. 838 (1910), and the question never arose under pre-Code law whether the trustee could assume the status of a Missouri chattel mortgagee. The Missouri Code Comment indicates that the Missouri legislature was unaware of any pre-Code state rule circumscribing the seller's right to reclaim and sheds no light on the legislature's understanding of the effect of § 2–702(3).

In light of the foregoing discussion, choosing among the various proposed inter-

according to the terms of § 2–702(3). For more extended discussions of this subject, *see* Shanker, *supra* at 104–05; Harvard Note, *supra* at 611; Henson, *supra* at 49; Kennedy, *supra* at 834–35; Braucher, *supra* at 1290; *Comment,* 45 Cornell L.Q. 566, 567–68, n. 5 (1960).

**6.** It has been cogently argued that the failure of a seller to perfect a security interest should not subordinate his § 2–702(2) right to the claims of the buyer's lien creditors. Benfield, *Rights of a Seller's Assignee to Reclaim Goods Under the UCC,* 53 Tex.L.Rev. 1, 5–10 (1974). As noted below, we do not reach the issue in this case, because Bassett did not attempt to reserve a security interest in the goods sold to PFA.

pretations of § 2–702(3) is an unenviable task. None is free from criticism. After careful consideration, we hold that the reference to the rights of lien creditors in § 2–702(3) directs that those rights be found exclusively under Article 2 or in the articles to which Article 2 cross references such as § 2–403 refer. Section 2–702(3) specifically displaces pre-Code law on the subject. We also hold that the trustee acquires no rights under the facts existing in this case from §§ 2–403, 2–326, or 9–301. We do not decide whether the trustee would have prevailed had the seller reserved an unperfected security interest or if the sale had been governed by § 2–326 provisions for "sale or return" arrangements. In sum, we hold that under Missouri law, no lien creditor could cut off Bassett's right to reclaim under § 2–702(2). By the same token, we hold that the trustee is not entitled under § 70(c) to cut off Bassett's reclamation petition. We favor this analysis because, unlike that of the district court, it is consistent with the most common understanding of the purpose of § 2–702(2) —to simplify and expand the seller's right to reclaim. And, unlike the analyses of *Kravitz* and *Federal's*, our interpretation comports with the Code's policy of uniformity and avoids dependence upon obscure variations in state common law.

Arguments have also been advanced that the trustee could cut off the seller's rights under §§ 64 and 67(c) of the Bankruptcy Act, 11 U.S.C. §§ 104 and 107(c) (1970). We reject those arguments.

A historical perspective is essential to understand these sections of the Bankruptcy Act. Prior to 1938, Congress explicitly recognized state priorities for bankruptcy distributions in § 64 of the Bankruptcy Act. To be distinguished from priorities are liens, which are implicitly recognized as valid property interests to be satisfied out of the assets before distribution of the bankrupt's estate to the general creditors. Sen. Rep.No. 1159, 89th Cong., 2d Sess., 1966 U.S.Code Cong. & Admin.News p. 2456; *Collier on Bankruptcy* ¶ 67.20[1]. A seller's right of reclamation for fraud was also unquestionably permitted in bankruptcy

proceedings, *Bankruptcy*, 9 Am.Jur.2d § 1197; *O'Rieley v. Endicott-Johnson Corp.*, 297 F.2d 1, 3–4 (8th Cir. 1961). The right of rescission was never classified among the state priorities explicitly recognized by Congress prior to 1938 for distribution of a bankrupt's estate; reclaimed goods were simply not regarded as part of the bankrupt's estate. *Gillespie v. J. C. Piles & Co.*, 178 F. 886 (8th Cir. 1910). Nor was the right to rescind considered a lien. Henson, *supra* at 50–51. While a lien "is no more than a charge or encumbrance upon property," *Liens*, 51 Am.Jur.2d § 2, the right to reclaim was understood to involve the concept of voidable title, with title being restored to the seller. *William Openhym & Son v. Blake, supra; Manly v. Ohio Shoe Co.*, 25 F.2d 384, 385 (4th Cir. 1928).

In 1938, Congress passed the Chandler Act amendments to the Bankruptcy Act.

[T]he Chandler Act eliminated the recognition of State priorities in bankruptcy proceedings, except for a limited priority for landlords, which was placed on the lowest of the five rungs of the priority ladder erected by section 64. The act also gave explicit recognition for the first time to the general validity of statutory liens. Sen.Rep.No. 1159, *supra* at 2457.

Section 67(b) provided that statutory liens were valid against the trustee. Section 67(c) under the Chandler Act, however, subordinated statutory liens on personal property unaccompanied by possession to administrative expenses and wages. Congress recognized "the growing tendency to express priorities in terms of liens" and deemed "liens which became effective only in the event of insolvency or which did not attach to any particular asset" to be "in reality disguised priorities." *Id.* U.S.Code Cong. & Admin.News 1966 p. 2457. Section 67(c) was intended to guard against disguised priorities. Neither the developments under §§ 64 or 67(c) affected the conceptually distinct pre-Code right of reclamation.

Section 67(c) was strengthened in 1952, when many statutory liens were completely invalidated against the trustee. Shortly

thereafter, states began adopting the Code and in doing so, substituting § 2–702(2)· for the pre-Code right of reclamation. Under the 1952 legislation, § 2–702(2) would have been invalid had it been considered a statutory lien. *See* Braucher, *supra* at 1294. But there was no hint prior to 1966 that § 2–702(2) was to be considered a statutory lien under the Bankruptcy Act, though the Code had by then been adopted by thirty-seven states and Congress for the District of Columbia.

Dissatisfied with the standards in § 67(c), Congress in 1966 substantially revised the classes of statutory liens that are invalid against a trustee. Congress was primarily concerned about inconsistent interpretations of its prior standards and sought to clarify, though not necessarily to extend, the scope of § 67(c). *Collier on Bankruptcy* ¶ 67.20[2].[7] In redefining § 67(c) standards, Congress sought to adhere to the policy of the 1938 Chandler Act and invalidate spurious statutory liens. Sen.Rep.No. 1159, *supra* at 2458–61. Toward that end, § 67(c)(1)(A) strikes down statutory liens which first become effective upon the insolvency of the debtor, because they:

> merely determine the order of distribution upon insolvency or liquidation. This kind of lien is not a specific property right which may be asserted independently of a general distribution and regardless of the transfer of the property. This is clearly a disguised priority. *Id.* at 2461.

Section 67(c)(1)(B) defeats statutory liens "not perfected at the date of bankruptcy as against a subsequent bona fide purchaser from the debtor on that date." *Id.;* U.S. Code Cong. & Admin.News 1966, p. 2461. Such liens are:

7. At the time of the 1966 bankruptcy legislation, Braucher did not foresee any major impact on § 2–702. Braucher, *supra* at 1294. Nor did *Collier on Bankruptcy* ¶¶ 67.20 and 70.41.

8. Because § 1(29a), 11 U.S.C. § 1(29a) (1970), excludes consensual liens from the definition of statutory liens, most Article 9 security interests are not affected by § 67(c). Nevertheless, there is a strong parallel between security interests and liens. Compare the definition of security interest in § 1–201(37) with the definition of lien adopted in *In re Giltex, Inc.,* 17 U.C.C.Rep.

so tenuous that [they] can be defeated by transfer to a bona fide purchaser. The holders of such liens have reason to know that their security is extremely vulnerable. It would seem that if, apart from bankruptcy, a lien is not good against a bona fide purchaser, then it should not be valid against the trustee. *Id.;* U.S.Code Cong. & Admin.News 1966, p. 2461.

To make it clear that consensual liens were not affected by § 67(c), Congress also promulgated 11 U.S.C. § 1(29a), which purportedly defines "statutory lien," though it actually defines only "statutory" to mean "arising solely by force of statute." [8]

The question before us is whether, in light of the relevant statutes and the legislative history, the seller's right to reclaim under § 2–702(2) should be considered a statutory lien or a priority even though the pre-Code right of rescission was neither a lien nor a priority. Many courts have examined the language from the Senate Report quoted above in an effort to determine whether § 2–702(2) is vulnerable to the criticisms that Congress levelled at statutory liens and preferences. Most courts agree that the right of reclamation, unlike a floating lien or a priority, "is a specific property right." Nevertheless, because the § 2–702(2) seller's right is contingent on insolvency, because the right to reclaim can be cut off by a buyer in ordinary course, and because the Code has dispensed with actual proof of fraud, many courts and commentators have concluded that the § 2–702(2) right of reclamation must be classified as a statutory lien within the meaning of the Bankruptcy Act[9] or as a priority in conflict

Ser. 887, 890 (S.D.N.Y.1975), and *In re Wetson's Corp.,* 17 U.C.C.Rep.Ser. 423 (S.D.N.Y. 1975). Thus the arguments relating to whether § 2–702(2) creates a security interest often are similar to those concerning § 2–702(2) as a lien. *See generally* Kennedy, *The Interest of a Reclaiming Seller under Article 2 of the Code,* 30 Bus.Law. 833, 834–36 (1975).

9. It is generally assumed that if § 2–702(2) is deemed a statutory lien, it is invalid either as a lien becoming effective upon insolvency, § 67(c)(1)(A), *In re Giltex, Inc., supra,* or as a lien that can be defeated by a good faith pur-

with § 64. *See, e. g., In re Kee Lox Manufacturing Co.,* 22 U.C.C.Rep.Ser. 938 (E.D. Pa.1977); *In re Perskey & Wolf, Inc.,* 19 U.C.C.Rep.Ser. 812 (Ref.D.N.D.Ohio 1976); *In re Wetson's Corp.,* 17 U.C.C.Rep.Ser. 423 (Ref.D.S.D.N.Y.1975); *In re Giltex, Inc.,* 17 U.C.C.Rep.Ser. 887 (S.D.N.Y.1975); *In re Daley, Inc.,* 17 U.C.C.Rep.Ser. 433 (Ref.D.D. Mass.1975); *In re Good Deal Supermarkets, Inc.,* 384 F.Supp. 887 (D.N.J.1974); *In re Federal's, Inc.,* 12 U.C.C.Rep.Ser. 1142 (Ref. D.E.D.Mich.1973), *aff'd,* 402 F.Supp. 1357 (E.D.Mich.1975), *reversed,* 553 F.2d 509 (6th Cir. 1977). *See* Bjornstad, *supra* at 365–68; Countryman, *supra* at 452–59; *Comment, Statutory Liens and the Bankruptcy Act: U.C.C. § 2–702 and Section 67(c),* 10 Creighton L.Rev. 733 (1977) (Creighton Comment): Pittsburgh Comment, *supra* at 928–33. "Viewed realistically," they conclude, § 2–702(2) "promotes the very evils" Congress sought to eliminate. *In re Good Deal, supra* at 889.[10]

Notwithstanding the authorities cited above, the two circuit courts that have faced this matter both concluded that § 2–702 is neither an unlawful priority in conflict with § 64 nor invalid against a trustee under § 67(c). *In re Federal's, Inc., supra; In the Matter of Telemart Enterprises, Inc.,* 524 F.2d 761 (9th Cir. 1975). *See also In re National Bellas Hess, Inc.,* 17 U.C.C.Rep.Ser. 430 (Ref.D.S.D.N.Y.1975); Sebert, *supra;* Henson, *supra;* Braucher, *supra.* Though the views of courts that strike down § 2–702(2) have force, we agree with the Sixth and Ninth Circuits that § 2–702(2) is valid.

chaser, § 67(c)(1)(B), Sebert, *supra* at 224–25 n.40. Neither assumption, however, is free from doubt. With respect to § 67(c)(1)(A), *compare* Henson, *supra* at 52, *with* Sebert, *supra,* and Creighton Comment, *supra.* With respect to § 67(c)(1)(B), *compare In re Trahan,* 283 F.Supp. 620 (W.D.La.), *aff'd per curiam,* 402 F.2d 796 (5th Cir. 1968), *cert. denied,* 394 U.S. 930, 89 S.Ct. 1189, 22 L.Ed.2d 459 (1969), *with Note, Statutory Liens Under Section 67c of the Bankruptcy Act: Some Problems of Definition,* 43 Tul.L.Rev. 305, 320–22 (1969). In view of our ruling that § 2–702(2) does not create a statutory lien, we need not consider these issues.

Both circuits emphasized the ancestry of § 2–702(2), though the Sixth Circuit properly recognized differences between § 2–702(2) and its pre-Code predecessor.[11] With respect to the alleged conflict with § 64, the *Federal's* court stated:

[T]he rights reserved to the defrauded seller under [2–702] are the direct descendants of those historically preserved under the common law and so respected by the Bankruptcy Act. They are rights with respect to *particular* goods and in which the purchaser's title was historically voidable. In contrast, a priority within the meaning of the Bankruptcy Act contemplates a claim which is satisfied from the *general assets* of the bankrupt's estate and is asserted after the satisfaction of secured liens but before the debts of general creditors. 553 F.2d at 518. (emphasis in original).

With respect to § 67(c), the *Federal's* court saw in § 2–702(2) a permissible "adaptation of the historical equitable remedy [of rescission for fraud] to modern commercial life" directed toward the "achievement of certainty and reliability in the determination of rights." 553 F.2d at 517. While we are less than sanguine about the success of the Code in achieving certainty under § 2–702, we agree that the "basic updating" of the seller's right of reclamation has not divested it of its validity as a "state-created right of ownership."

Section 2–702 is not an attempt to elevate a group of creditors that have historically found themselves in the general distribution of a bankrupt's estate. It is the exclusive substitute for the long respected right

**10.** A number of courts have indicated that once § 2–702(2) is invalidated under § 67(c), the seller is still entitled to proceed under the pre-Code theory of reclamation for actual fraud. *See, e. g., In re Giltex, Inc., supra; In re Wetson's supra.* This view has been questioned. *See, e. g.,* Pittsburgh Note, *supra* at 932–33.

**11.** The *Telemart* court stated that the seller's right to reclaim is "indistinguishable from" the pre-Code right to reclaim. As discussed above, *see* note 2, *supra,* there are obvious differences, some favoring the seller, others favoring the buyer and its creditors.

to reclaim.[12] Viewed realistically, it is no more objectionable to bankruptcy policy than its pre-Code antecedent,[13] which we sustained without qualm under the 1952 legislation.[14] As noted above, the element of fraud is not difficult to infer in the limited circumstances under which § 2–702(2) permits reclamation. Hawkland, *supra*; Henson, *supra*.[15] Given the short-lived nature of the right to reclaim, the fact that the remedy is limited to the specific goods delivered to the insolvent buyer, the fact that the reclaiming seller has no right to pursue deficiencies remaining after reclamation, and the opportunity for creditors who actually rely on the buyer's possession of the goods to protect themselves with security interests, *see* Sebert, *supra* at 228–31, we think it likely that Congress continues to prefer the equities of sellers under § 2–702(2) to those of general creditors for much the same reasons that it permitted a seller to reclaim under pre-Code law.[16] We hold that the right of reclamation under § 2–702(2) is neither a priority in conflict with § 64 nor a lien subject to invalidation as a statutory lien under § 67(c).[17]

Finally, we note our agreement with the district court that reclamation here would not constitute a preferential transfer that is impermissible under § 60 of the Bankruptcy Act, 11 U.S.C. § 96 (1970). *See Collier on Bankruptcy, supra,* ¶ 60.18 at 843–45; Sebert, *supra* at 233–34; King, *Voidable Preferences and the Uniform Commercial Code*, 52 Cornell L.Q. 925, 939 (1967).

We reverse and remand for further proceedings in conformity with the principles set forth in this opinion.

HENLEY, Circuit Judge, concurring in the result.

I concur in the conclusion that Bassett Furniture Industries, Inc. (Bassett), as a reclaiming seller under U.C.C. § 2–702(2),

---

**12.** We do not agree with the implication in *Telemart* that states may circumvent Federal bankruptcy policy by labelling priorities "rescission." *See* 524 F.2d at 766. Labels are not determinative under § 67(c). But we do agree that the § 2–702(2) right of rescission is not a lien.

**13.** Several commentators have argued that § 2–702(2)'s presumption of fraud would be more compatible with the bankruptcy laws if it were rebuttable. *See, e. g.,* Bjornstad, *supra* at 369; Harvard Note, *supra* at 612. Others have disputed this, however, urging retention of the § 2–702(2) practice as "more consistent with the everyday reality of business dealings between debtors and creditors." Weintraub & Edelman, *Seller's Right to Reclaim Property Under Section 2–702(2) of the Code under the Bankruptcy Act: Fact or Fancy*, 32 Bus.Law. 1165, 1166 (1977).

**14.** In *O'Rieley v. Endicott-Johnson, supra*, we said:

> While we realize that a decision in favor of Endicott has the practical effect, as pointed out by the Trustee in its argument, of favoring one creditor over the general creditors, this is necessarily true of any successful reclamation petition. It would be unjust to permit general creditors to benefit at the expense of one whose assets come into a bankrupt's possession under conditions which warrant rescission." 297 F.2d at 9.

**15.** Essentially, the question we face is whether we should infer from ambiguous bankruptcy legislation that Congress would permit reclamation only upon a showing of actual fraud and not on the basis of the presumptions of fraud under § 2–702(2). In this light, we find nothing in the Bankruptcy Act that requires Federal bankruptcy courts to disturb:

> the combined empirical judgment of 49 states of the Union [as well as Congress itself for the District of Columbia] that the irrebuttable presumption of fraud in § 2–702(2) conforms to the experience in the majority of cases. *In re Federal's, Inc., supra* at 517.

**16.** We note that Congress is currently considering H.R. 8200 which at § 546(b) would eliminate any doubt that Congress approves reclamation in bankruptcy under § 2–702(2). *See* H–11732–33, Cong.Rec., 95th Cong., 2d Sess. (Oct. 28, 1977); H. 457–58, Cong.Rec., 95th Cong., 2d Sess. (Feb. 1, 1978).

**17.** The *Federal's* court drew a distinction between statutory and common law liens, holding that only the former are invalid under § 67(c). It has been suggested that Congress intended *only* to draw a distinction between statutory and consensual liens. *See In re Giltex, Inc., supra* at 889 n.4; Creighton Comment, *supra* at 735–38. We hold that the § 2–702(2) right of reclamation is not a lien. But we also do not think § 67(c) invalidates common law liens and would agree with the *Federal's* holding if the right of reclamation were deemed a lien. *See Collier on Bankruptcy,* ¶ 67.20[2] at 215.

Mo.Rev.Stat. § 400.2–702(2) (1969), prevails over the bankruptcy trustee in this action.

## I.

Under Mo.Rev.Stat. § 400.2–702(2) (1969), a seller may reclaim goods sold on credit to an insolvent buyer if he demands reclamation of the goods within ten days of the buyer's receipt. The seller's right to reclaim the goods, however, is subject, under Mo.Rev.Stat. § 400.2–702(3) (1969), "to the rights of a . . . lien creditor . . ."[1]

After learning of PFA Farmers Market Association's (PFA) insolvency, Bassett made a timely demand to reclaim the goods. Two days earlier, however, PFA had filed a petition under Chapter XI of the Bankruptcy Act (the Act). Under section 70(c) of the Act, 11 U.S.C. § 110(c)(1976), the bankruptcy trustee assumes the status of a hypothetical lien creditor as of the date the petition is filed.[2] The issue before us in this appeal is whether Bassett's reclamation right under Mo.Rev.Stat. § 400.2–702(2) (1969) was cut off by the intervening bankruptcy petition.

In his scholarly opinion, Judge Larson wrestles with the different approaches that courts and commentators have utilized in resolving this issue. As the opinion points out, although section 70(c) of the Act confers upon the bankruptcy trustee the *status* of a hypothetical lien creditor on the date of bankruptcy, the trustee's *rights* as a lien creditor are defined by state law. *See* 3A R. Duesenberg & L. King, *Sales and Bulk Transfers Under the Uniform Commercial Code*, ¶ 13.03[4][ii] at 13–32 (1978); J. White & R. Summers, *Handbook of the Law Under the Uniform Commercial Code* 245 (1972). In short, when, under state law, a lien creditor has no priority over a reclaiming seller, neither does the trustee.

In deciding the relative priorities of a reclaiming seller and the bankruptcy trustee, as a lien creditor, we initially look to the U.C.C. (the Code) itself. As Judge Larson notes, Mo.Rev.Stat. § 400.2–702(3) (1969) merely states that a seller's reclamation right is subject to the rights of a lien creditor. The Code, however, neither defines nor explains those rights.[3]

When the U.C.C. omits to deal with a particular aspect of a transaction covered by its provisions, courts are directed to resort to principles of law outside the Code. *See* R. Braucher & R. Riegert, *Introduction to Commercial Transactions* 19 (1977). U.C.C. § 1–103 provides in part:

> Unless displaced by the particular provisions of this chapter, the principles of law and equity . . . *shall* supplement its provisions (emphasis added).

Mo.Rev.Stat. § 400.1–103 (1969).

Because resolution of the issue before us is not contained in the Code, we should, in my view, apply the pre-Code common law of Missouri, whose law governs this transaction.

1. The lien creditor to which the U.C.C. (the Code) refers is a judicial lien creditor. *See* 4A *Collier on Bankruptcy* ¶ 70–62A at 721 (14th ed. 1976).

2. The trustee assumes the status of a judicial lien creditor as of that date. *See* 4A *Collier on Bankruptcy* ¶ 70–62A at 721 (14th ed. 1976).

3. Mo.Rev.Stat. § 400.2–702(3) (1969) refers the reader to § 400.2–403. That provision, which neither defines lien creditor nor his rights, states that the rights of lien creditors are governed by article 9 (secured transactions). While Mo.Rev.Stat. § 400.9–301(3) (1969) includes a bankruptcy trustee within its definition of lien creditor, article 9 generally does not appear to be applicable because the parties to this transaction did not intend to create a security interest ("an interest in personal property . . . which secures payment . . . of an obligation," § 400.1–201(37)). *See* Mo. Rev.Stat. § 400.9–102(1)(a) (1969).

Thus, despite these cross-references, the Code is curiously silent in explaining the rights of lien creditors to which a seller's right to reclaim, under U.C.C. § 2–702(3), is subject. This omission in the Code has been identified and criticized. *See In re Kravitz*, 278 F.2d 820, 821–22 (3d Cir. 1960); R. Speidel, R. Summers & J. White, *Commercial and Consumer Law* 1231–32 (2d ed. 1974); 3A R. Duesenberg & L. King, *Sales & Bulk Transfers Under the Uniform Commercial Code*, ¶ 13.03[4][ii] at 13–27 —13–32 (1978); Note, *Bankruptcy and Article Two of the Uniform Commercial Code: The Right to Recover the Goods Upon Insolvency*, 79 Harv.L.Rev. 598, 610 (1966).

Judge Larson does not rely upon Missouri common law. Instead, he reaches his decision in favor of Bassett, the reclaiming seller, by relying generally upon the policies and goals of U.C.C. § 2–702, "to simplify and expand the seller's right to reclaim." This approach is said to comport with the Code's policy of uniformity and avoid dependence upon obscure variations in state common law. Thus, even though the Code does not define the rights of a lien creditor to which a seller's right to reclaim is subject, Judge Larson holds that Mo.Rev.Stat. § 400.2–702 (1969) "specifically *displaces* pre-Code law on the subject" (emphasis added).

Such holding may promote uniformity and be easier for courts to apply. In my view, however, the court should proceed under U.C.C. § 1–103 to apply "the principles of law and equity" of the state.

This course has been followed by several courts in resolving the precise issue presented in this appeal, *see Matter of Federal's Inc.,* 553 F.2d 509, 512 (6th Cir. 1977); *In re Mel Golde Shoes, Inc.,* 403 F.2d 658, 660 (6th Cir. 1968); *In re Kravitz,* 278 F.2d 820, 822 (3d Cir. 1960); *In re Royalty Homes, Inc.,* 8 UCC Rep.Serv. 61, 64–65 (E.D.Tenn.1970), and has been discussed by commentators with approval. *See* 3A R. Duesenberg & L. King, *Sales & Bulk Transfers Under the Uniform Commercial Code* ¶ 13.03[4][ii] at 13–32 (1978); R. Speidel, R. Summers & J. White, *Commercial and Consumer Law* 1233 (2d ed. 1974); Note, *Bankruptcy and Article Two of the Uniform Commercial Code: The Right to Recover the Goods Upon Insolvency,* 79 Harv.L.Rev. 598, 610 (1966).

## II.

Under the principles enunciated by Missouri courts prior to the Code's enactment, the reclaiming seller would prevail over the bankruptcy trustee in this action. *See William Openhym & Sons v. Blake,* 157 F. 536, 538–40 (8th Cir. 1907), *appeal dismissed,* 216 U.S. 322, 30 S.Ct. 309, 54 L.Ed. 498 (1910); *Blake v. Meadows,* 225 Mo. 1, 26, 123 S.W. 868, 874 (1909); Comment, *Bankruptcy Reclamation and the Uniform Commercial Code,* 33 Mo.L.Rev. 262, 269–70 (1968). While there do not appear to be any decisions specifically dealing with a defrauded seller's right to reclaim property from a bankrupt's estate, *see id.,* the cases suggest quite strongly that the seller's reclamation right would not be cut off by an intervening bankruptcy petition. *See, e. g., Blake v. Meadows, supra,* 225 Mo. at 26, 123 S.W. at 874 (bankruptcy trustee takes possession of the bankrupt's property subject to the equities to which the property was subject in the hands of the bankrupt). Under Missouri law, a seller's right to reclaim is well established when there has been actual fraud on the part of the buyer. *See Gratton and Knight Manufacturing Co. v. Troll,* 77 Mo.App. 339, 345 (1898); *Moore & Bier v. Hinsdale,* 77 Mo.App. 217, 223 (1895); *Reid, Murdock & Co. v. Lloyd & Moorman,* 52 Mo.App. 278, 279 (1893); *Manheimer v. Harrington,* 20 Mo.App. 297, 300 (1886). Since the Code conclusively presumes fraud when an insolvent buyer purchases goods on credit, *see* Mo.Rev.Stat. § 400.2–702(2), Official Comment 2, it follows that a reclaiming seller would prevail over a judicial lien creditor in Missouri. *See* Comment, *Bankruptcy-Reclamation and the Uniform Commercial Code, supra,* 33 Mo.L.Rev. at 269–70.

Because, under Missouri law, a reclaiming seller's right to reclaim goods under Mo. Rev.Stat. § 400.2–702(2) (1969) would be unaffected by an intervening bankruptcy petition, I join in Judge Larson's result reversing the district court's judgment.[4]

---

4. Judge Ross, in his dissent, is persuaded that a seller's right to reclaim under U.C.C. § 2–702(2) is a "statutory lien" for purposes of section 67(c)(1)(A) of the Act and is invalid as against the bankruptcy trustee. I am not convinced. As Judge Larson notes, the two circuits specifically confronting this issue, have both decided that a seller's reclamation right under U.C.C. § 2–702 is not a statutory lien, which is invalid as against a bankruptcy trustee under § 67(c) of the Act. *See In re Federal's, Inc.,* 553 F.2d 509, 513–14 (6th Cir. 1977); *In the Matter of Telemart Enterprises, Inc.,* 524 F.2d 761, 763–64 (9th Cir. 1975), *cert. denied,* 424 U.S. 969, 96

ROSS, Circuit Judge, dissenting.

I am persuaded that a credit seller's right to reclaim goods under section 2–702 of the Uniform Commercial Code is a "statutory lien" as that term is used in section 67(c)(1)(A) of the Bankruptcy Act, 11 U.S.C. § 107(c)(1)(A), and is thus invalid as against the buyer's trustee. Therefore, I respectfully dissent.[1]

Section 67(c)(1)(A) of the Bankruptcy Act invalidates as against the trustee, *inter alia*, "every statutory lien which first becomes effective upon the insolvency of the debtor." By its express terms, section 2–702 of the Uniform Commercial Code is of no effect unless the buyer is insolvent. The question, therefore, is whether that section creates a "statutory lien."

"Statutory lien" is defined in the Bankruptcy Act as "a lien arising solely by force of statute upon specified circumstances or conditions, but shall not include any lien provided by or dependent upon an agreement to give security * * *." 11 U.S.C. § 1(29a). The majority opinion stresses what it terms "the ancestry" of section 2–702 in reaching its conclusion that the seller's right to reclaim does not arise "solely by force of statute." A similar conclusion was reached by the court in *In re Federal's, Inc.*, 553 F.2d 509 (6th Cir. 1977), where it was stated:

> Nevertheless, we are persuaded that the right asserted by the seller under § 2–702(2) is a valid state-created right of ownership. Because that right conceptually has its antecedents in the historical and equitable right of a defrauded seller to reclaim the goods he has sold to an insolvent buyer, we hold it cannot be said to arise "*solely* by force of statute" under § 1(29).

*Id.*, 553 F.2d at 516 (emphasis in original).

In my opinion, the reliance on the common law heritage of section 2–702 is misplaced. As the above-quoted language of

section 1(29a) makes plain, the distinction drawn by the Bankruptcy Act is that between statutory and *consensual* liens, not that between statutory and *common law* liens. This distinction was made explicit in the legislative history of section 1(29a):

> Since the effect of section 67c is limited to statutory and does not include consensual liens, it is essential that the term "statutory lien" be clearly defined. * *

> * * * * * *

> The purpose of section 1 is to specifically embody the meaning which Congress originally intended in the act and thus to assure that consensual securities are not subjected to any of the tests of validity prescribed by the new section 67c.

S.Rep.No.1159, 89th Cong., 2d Sess., [1966] 2 U.S.Code Cong. & Admin.News pp. 2456, 2460.

There is certainly nothing consensual about a seller's right to reclaim goods under section 2–702. Therefore, notwithstanding its historical origins, the seller's rights are not, on that basis, protected from invalidity under the Bankruptcy Act's definition of a statutory lien. The only question remaining is whether section 2–702 represents the type of device sought to be invalidated under section 67(c)(1)(A) of the Bankruptcy Act. I would hold that it does.

The historical development of section 67 of the Bankruptcy Act represents an attempt on the part of Congress to invalidate those devices of state creation which have the practical effect of distorting the federally ordered scheme of priority of distribution embodied in the Bankruptcy Act. *See In re Federal's, Inc., supra*, 553 F.2d at 516; *In re Telemart Enterprises, Inc.*, 524 F.2d 761, 764 (9th Cir. 1975). Thus, the targets of section 67 are those devices which operate more as priorities in bankruptcy than as legitimate property rights of the creditor. Labels, of course, are not important.

S.Ct. 1466, 47 L.Ed.2d 736 (1976). I agree with the reasoning set forth in those cases.

1. Because I would hold the seller's right to reclaim is an invalid statutory lien, I would

likewise find it unnecessary to consider whether the trustee could displace the seller by virtue of his status as a hypothetical lien creditor under section 70(c) of the Bankruptcy Act.

Whether denominated by the state legislature as a priority, a lien, or a right to reclaim, the effect of the device in the context of bankruptcy administration must be the overriding consideration.

Viewed in this context, recognition of section 2–702 clearly places sellers of goods in a position preferable, not only to the other general creditors of the bankrupt, but to priority claimants as well.[2] And this is so, not because of any equities shown to exist between the parties, but simply because the value extended by the seller took the form of goods and because the seller discovered the buyer's insolvency within ten days after delivery. This, in my opinion, is the type of disguised priority Congress was aiming at when it enacted section 67(c)(1)(A).

I would affirm the judgment of the district court.

2. I note in this connection that I am not persuaded that section 2–702 does not operate as a disguised priority because it gives the seller a claim in specific, rather than in the general assets of the debtor. The seller's right to reclaim operates as a statutory lien within the meaning of the Bankruptcy Act because it prevents priority claimants from taking as intended under § 64 of the Act, 11 U.S.C. § 104.