## CARSON v. MILCROW MOTOR SALES.

1. SALES—INSOLVENCY OF PURCHASER—INTENT.
   Fact that one knows at the time of a purchase on credit that
   he is insolvent and fails to disclose such fact to the seller
   does not of itself render the purchase void as there must also
   be an intent on his part not to pay for the goods purchased.

2. SAME—RESCISSION—MONEY DECREE—FRAUD—EVIDENCE—APPEAL.
   In suit against corporate dealer and two individual defendants
   for rescission of transaction whereby plaintiff turned in his
   car immediately to dealer toward a new car to be delivered
   in the future, where no decree whatever was entered against
   bankrupt corporation and testimony fails to support money
   decree against appellant on ground of fraud and plaintiff
   did not cross-appeal nor complain of failure to enter a decree
   of rescission, a decree for such relief will not be entered in
   Supreme Court and the decree against appellant is reversed.

Appeal from Wayne; Murphy (George B.), J.
Submitted June 4, 1942. (Docket No. 74, Calendar
No. 42,027.) Decided October 5, 1942. Rehearing
denied November 25, 1942.

Bill by Harry A. Carson against Milcrow Motor
Sales, formerly George Holzbaugh, Inc., a Michigan
corporation, and George Holzbaugh and Earl Holz-
baugh to set aside a contract, for a money decree
and other relief. Decree for plaintiff against de-
fendants Holzbaugh. Defendant Earl Holzbaugh
appeals. Reversed as to appellant.

*Harry A. Carson, in pro per.*

*Corliss, Leete & Moody,* for defendant Earl Holz-
baugh.

BUTZEL, J. On September 21, 1939, plaintiff,
while a college student, was the owner of a 1935

That insolvency of contracting party is merely evidence of inten-
tion not to perform, see 2 Restatement, Contracts, § 473, comment e.

Ford convertible sedan which he wished to sell or trade. He became acquainted with one of the Ford Motor Company's agents, who looked after the business of the company with its dealers. The agent recommended defendant George Holzbaugh, Inc., a retail dealer, for the purpose of trading in plaintiff's car. Plaintiff previously had tried to sell the car. All he could get for it was $110 but Holzbaugh, Inc., agreed to allow him $215 on a trade for a new car to be delivered in 1941, the old car to be turned in immediately. It also agreed to lend him an old car for use during the summer months of 1940. A written contract entered into on September 21, 1939, was signed by defendant Earl Holzbaugh, who stated that he would sign a contract embodying the oral agreement previously made by his brother George, absent on the date mentioned, the terms of the agreement being told to Earl by plaintiff.

There is no doubt that George Holzbaugh, Inc., at the time was insolvent and had been in that condition for a number of years. It owed $100,000 to the Holzbaugh brothers, also over $20,000 to a company of which Earl Holzbaugh's father-in-law was president. It also owed $70,000 to a Mrs. Germer who was vice-president of the corporation. This was secured by a chattel mortgage which had been running for almost seven years. It also owed the State of Michigan the sum of $42,550 which it had arranged to pay in monthly instalments of $250. In spite of the business being poor during the previous two years, the company had sold about 3,000 new cars and 6,000 used cars in 1938. The sales in 1938 amounted to about $3,000,000. During its peak year the company did a business of $5,000,000. It was just beginning to fill an order from the city of Detroit for 500 buses, on which order the profit

would be approximately $150,000. It also had other prospective business. On October 21, 1939, Mrs. Germer gave notice that she was about to foreclose her chattel mortgage. There is no claim by plaintiff that defendant Earl Holzbaugh made any representations whatsoever to him. George Holzbaugh, Inc., about October 11, 1941, changed its name to Milcrow Motor Sales, and shortly thereafter, on October 29, 1941, it was adjudicated a bankrupt in involuntary proceedings. In the latter part of May, 1940, plaintiff after some difficulty located Earl Holzbaugh who was then working for another Ford agency. He obtained no satisfaction from him. The following summer, plaintiff saw him again. He also saw George Holzbaugh who told him that the company was out of business and there was nothing he could do about it. Plaintiff thereupon rescinded his contract by letters to George Holzbaugh and Earl Holzbaugh. He began the instant suit against them and the corporation. He asks rescission of the contract, or, if the automobile cannot be returned, money damages. Plaintiff alleges in his bill of complaint that he had made a diligent but futile search for defendant Milcrow Motor Sales and its assets; that the corporation was insolvent at the time he made the contract with it; that the individual defendants knew of the condition of the corporation and had no intention whatsoever of carrying out the terms of the contract; that plaintiff had no adequate remedy at law. He asked that the contract be rescinded and set aside; that the defendants return to plaintiff title and possession of the automobile delivered to the corporation for sale two years before the beginning of suit; also that it pay damages, and, in case of defendants' inability to return the automobile, that they pay damages in a still larger amount.

The lower court in its decree did not rescind the sale but entered a decree for money damages only against George and Earl Holzbaugh in the sum of $215. George Holzbaugh has not appealed.

There is no testimony whatsoever that Earl Holzbaugh made any false representations to plaintiff or that at the time he signed his brother's name to the contract that either he or the company did not intend to pay for the automobile. While he was secretary and treasurer of the company and knew its financial condition, the record indicates that he had no reason to believe that the mortgage, which had been running for almost seven years to the vice-president of the company, was to be foreclosed. There also was good reason to believe that the payment of the large debts due himself and family would not be pressed and the other debts would be taken care of and that with the business in sight and the assets on hand the company would continue its business. The fact that one knows at the time of a purchase that he is insolvent and fails to disclose that fact to the seller does not of itself render the purchase void. There also must be an intent on his part not to pay for the goods purchased. *Zucker* v. *Karpeles,* 88 Mich. 413, 434; *Illinois Leather Co.* v. *Flynn,* 108 Mich. 91; *John Heidsik Co.* v. *Rechter,* 291 Mich. 708.

The testimony does not support a decree against Earl Holzbaugh. The judge did not enter any decree whatever against the Milcrow Motor Sales, and did not enter a decree of rescission, but only a money decree, against George and Earl Holzbaugh. A decree of rescission against the Milcrow Motor Sales would have been an idle gesture, as it had gone through bankruptcy. Inasmuch as plaintiff filed no cross-appeal and does not complain of the

failure of the court to enter a decree of rescission, a decree of rescission will not be entered in this court.

For the reasons hereinbefore stated, the decree of the circuit court against Earl Holzbaugh, the sole appellant, must be reversed. The others not having appealed, it will stand as to them.

Decree will be entered in this court in accordance with this opinion, with costs to defendant Earl Holzbaugh.

CHANDLER, C. J., and BOYLES, NORTH, STARR, BUSH-NELL, and SHARPE, JJ., concurred. WIEST, J., did not sit.