In the Matter of TELEMART ENTER-
PRISES, INC., Bankrupt.

ALFRED M. LEWIS, INC.,
Petitioner-Appellant,

v.

Lawrence HOLZMAN, Trustee,
Appellee.

No. 73–2694.

United States Court of Appeals,
Ninth Circuit.

Sept. 17, 1975.

Order Nov. 6, 1975.

Norman R. Allenby (argued), San Diego, Cal., for petitioner-appellant.

David A. Block (argued), San Diego, Cal., for appellee.

## OPINION

Before CHAMBERS, CHOY and GOODWIN, Circuit Judges.

CHOY, Circuit Judge:

Telemart Enterprises, Inc., is a California corporation formed to engage in the sale and delivery of retail merchandise—primarily grocery goods—in re-

sponse to telephone orders. Telemart opened for business on September 13, 1970, experienced immediate operational difficulties, and petitioned for a Chapter XI arrangement on September 29.

Alfred M. Lewis, Inc. (Lewis), sold frozen foods and groceries worth $61,587.43 on credit to Telemart. Lewis had delivered this merchandise throughout the period from August 27 to September 25. On September 30, having learned of Telemart's Chapter XI petition, Lewis demanded return of the delivered goods pursuant to section 2–702(2) of the Uniform Commercial Code (Calif.Comm.Code § 2702(2)). The referee in bankruptcy denied Lewis' petition for reclamation on the ground that Lewis had failed to prove that Telemart was insolvent at any time before September 29. The district court affirmed without opinion. Lewis appeals, claiming not only errors in the referee's findings, but violations of his procedural rights before the bankruptcy court. We reverse and remand for a new hearing.

### Statutory Lien

■ The trustee asserts at the outset that UCC § 2–702(2)[1] is invalid against him because it is statutory lien which first becomes effective upon the insolvency of the debtor. Bankruptcy Act § 67c(1)(A), 11 U.S.C. § 107c(1)(A).[2] His argument that the right to reclaim has the same effect as a lien has found in-

creasing support recently from courts and commentators. *In re Good Deal Supermarkets, Inc.*, 384 F.Supp. 887 (D.N.J. 1974); *In re Federal's, Inc.*, 12 UCC Rep. Serv. 1142 (E.D.Mich.1973); Countryman, *Buyers and Sellers of Goods in Bankruptcy*, 1 New Mexico L.Rev. 435 (1971).[3] We believe, however, that to so hold would violate Congress' intent in enacting section 67c.

■ One principal goal of the Bankruptcy Act is to distribute the bankrupt's assets equitably among all of his creditors.[4] At the same time, Congress has maintained a general policy of recognizing property interests established by state law. Thus, section 70a vests the trustee only "with the title of the bankrupt as of the date of the filing of the petition . . . ." 11 U.S.C. § 110a. The trustee is subject to the same defenses as the bankrupt from whom he derives his title. *See Bank of Marin v. England*, 385 U.S. 99, 101, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966); *Donaldson v. Farwell*, 93 U.S. 631, 23 L.Ed. 993 (1876). These two policies are inherently contradictory, and much of the history of the Act chronicles successive attempts by Congress to strike a proper balance between the interests involved. *See* Marsh, *Triumph or Tragedy? The Bankruptcy Act Amendments of 1966*, 42 Wash.L.Rev. 681, 732–33 (1967).

■■ The Act's handling of statutory liens has been one focal point of this

---

**1.** (2) Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within ten days after the receipt, but if misrepresentation of solvency has been made to the particular seller in writing within three months before delivery the ten day limitation does not apply. * * *

**2.** c. (1) The following liens shall be invalid against the trustee:
   (A) every statutory lien which first becomes effective upon the insolvency of the debtor, or upon distribution or liquidation of his property, or upon execution against his property levied at the instance of one other than the lienor . . . .

**3.** *See also* Comment, *In re Federal's, Inc.: A New Way for the Trustee in Bankruptcy to*

*Defeat a Reclaiming Seller*, 35 U.Pitt.L.Rev. 922 (1974). *But see* Hawkland, *The Relative Rights of Lien Creditors and Defrauded Sellers—Amending the Uniform Commercial Code to Conform to the Kravitz Case*, 67 Com.L.J. 86 (1962); Comment, *Uniform Commercial Code—§ 2–702: Conflict with § 67c(1)(A) of the Federal Bankruptcy Act*, 53 N.C.L.Rev. 169 (1974); Comment, *Statutory Liens Under Section 67c of the Bankruptcy Act: Some Problems of Definition*, 43 Tul.L.Rev. 305 (1969).

**4.** "One of the fundamental purposes of the Bankruptcy Act is to assure an equitable distribution of the bankrupt's assets. Ideally, this would be accomplished by giving each creditor a pro rata share of the estate."

Sen.Rep.No.1159, 89th Cong., 2d Sess., 1966 U.S.Code Cong. & Ad.News 2456.

conflict. The Act frustrates a debtor's attempt to prefer some creditors over others by invalidating transfers on account of antecedent debts made while insolvent and within four months of the date of bankruptcy. Section 60, 11 U.S.C. § 96. A lien, of course, is an interest in property. Before 1938, however, section 60 did not conflict with a state's power to define property interests by creating liens. The courts consistently held that liens created by state statute were immune from invalidation under section 60 as it then read. *See In re San Joaquin Valley Packing Co.*, 295 F. 311, 313–14 (9th Cir. 1924); 3 Collier, Bankruptcy ¶ 60.12 (14th ed. 1975). The Chandler Act of 1938 amended section 60, however (ch. 575, § 1, 52 Stat. 840, 869–71), and expanded the definition of a "transfer" to include creation of a lien. Bankruptcy Act § 1(30), 11 U.S.C. § 1(30). To insure that statutory—as opposed to consensual—liens would remain valid, even though created within four months of bankruptcy and while the debtor was insolvent, they were expressly excepted from the expanded sweep of section 60. Bankruptcy Act § 67b, 11 U.S.C. § 107b. Congress thus deferred to policy decisions by the states to favor certain classes of creditors by creating property interests in their behalf. Comment, *Liens and Fraudulent Transfers Under the Chandler Act*, 87 U.Pa.L.Rev. 317, 321–22 (1939); Comment, *Statutory Liens Under Section 67c of the Bankruptcy Act*, 62 Yale L.J. 1131, 1136 (1953).

This deference to state-created liens led to abuses. The Chandler Act abolished state statutory priorities among unsecured creditors at the same time that it recognized state liens. In section 64 of the Bankruptcy Act, it established five classes of general creditors entitled to successive priority in the distribution of the bankrupt's general assets. Creditors' groups quickly exerted pressure on state legislatures to preserve their favored position by upgrading their state priorities to the status of liens, thus perpetuating the conflict between state and federal priorities which the Chandler Act had been expected to end. Section 67c, as amended in 1966, is an attempt to minimize state conflicts with federal priorities by invalidating as against the trustee some of the more obviously spurious liens, those which function more as priorities in bankruptcy than as property interests. See Sen.Rep.No.1159, 89th Cong., 2d Sess., 1966 U.S.Code Cong. & Ad.News 2456, 2461.

Section 67c is thus a remedial trimming-back of the special exemption conferred on statutory liens by section 67b. It was not intended to serve as a new tool by which the trustee could cut down provisions of state law obviously not entitled to the benefits of section 67b. As discussed below, under section 2–702(2) receipt of goods on credit while insolvent is deemed a fraud on the creditor rendering the sale voidable. The sale thus is defective from its inception. Clearly no new security has been given for an antecedent debt; the "lien," if it is conceived as such, attached at the instant the debt was created. Because no transfer is made on account of an antecedent debt, section 60 could never be applicable. Section 2–702(2) clearly, therefore, was not an attempt to escape the effect of section 60 by creating a spurious statutory lien, and enactment of section 2–702(2) did not present the abuse which section 67c was designed to combat. Accordingly, we would not be justified in using section 67c to strike down UCC § 2–702(2).

### Disguised State Priority

The trustee suggests that even if section 2–702(2) is not a statutory lien, it is the result nonetheless of an analogous attempt by the state to give sellers of goods a priority in bankruptcy. Even if not invalid under section 67c, therefore, we should strike it down as in conflict with the policy against recognition of state priorities and with the federal scheme of priorities established by section 64 of the Act. We disagree.

■ Although the Act pursues a basic policy of deference to state definitions of property, giving the trustee only those interests in property possessed by the bankrupt under state law, this policy is an "interstitial" rule to be observed only when a more express provision of the Act does not command otherwise. *Bank of Marin,* 385 U.S. at 105, 87 S.Ct. 274 (Harlan, J., dissenting). The trustee's power under section 60 to avoid certain preferential transfers is but one instance in which he is armed with greater powers over property than was the bankrupt. We have held that a state-created property interest which functions in practice as a state priority is similarly ineffective against the trustee. *Elliott v. Bumb,* 356 F.2d 749 (9th Cir. 1966).

In *Elliott,* a California statute provided that a licensed issuer of money orders held the proceeds of the sale in trust for the benefit of the purchaser; furthermore, if the issuer commingled the proceeds with his own assets, all his assets were impressed with a trust in the amount of the proceeds. We held that identifiable funds were properly held in trust. We invalidated application of the statute to commingled funds, however. By relieving the purchaser of his normal obligation to trace the proceeds of the sale, the law in effect gave the purchaser a priority over other general creditors in the unsecured portion of the bankrupt's estate.[5]

The distinction drawn in *Elliott* is instructive. Under state law, the issuer of the money order accepted payment only in the capacity of a trustee; he never held absolute ownership of the funds. We respected the state's definition of the issuer's relationship to those paid-in funds. On the other hand, we disregarded the state's attempt to impose a "trust" on funds whose ownership had vested previously in the issuer. Regardless of the state's terminology, the effect

of the statute was to give one class of creditors—purchasers of money orders—priority in the distribution of the bankrupt issuer's general assets.

The difficulty in applying this distinction to section 2–702(2) results from the UCC's policy against defining rights and duties between parties in terms of "title." The Code does provide that in situations not covered by the Code in which title is material, title shall be deemed to pass upon physical delivery of the goods. UCC § 2–401(2). A reservation of title by the seller is to be regarded as reservation of a security interest. UCC § 2–401(1). Hence, title to the goods in question did pass from Lewis to Telemart.

■ The Code nowhere discusses the concept of a voidable transfer of title. The right of a seller under section 2–702(2) to reclaim goods and be restored to his pre-sale status is, however, indistinguishable from a right to rescind a voidable transaction. Comment 2 to section 2–702 makes clear that receipt of goods on credit while insolvent is deemed a fraud on the creditor. Because section 2–702(2) authorizes the exact equivalent of the common law remedy of rescission, it would be unreasonably formalistic not to recognize that sales described by that section result in a transfer of only voidable title. *Compare* Restatement, Contracts § 476; 12 S. Williston, Treatise on the Law of Contracts § 1454 (3rd ed. 1970).

■ The goods thus received under voidable title are analogous to the traceable funds received from sale of money orders in *Elliott.* In neither case does the state derogate from the rights of general creditors to the estate of the bankrupt, because in neither case did the bankrupt receive full powers of ownership over the assets in question. We hold that a state confers a priority repugnant to section 64 only when it attempts to direct the disposition of assets

---

5. *See also In re Crosstown Motors, Inc.,* 272 F.2d 224 (7th Cir. 1959) (Illinois Trust Receipts Act, giving entruster a lien on bankrupt's general assets in payment for commingled proceeds, held to be a "crystal clear" attempt by the legislature to give the entrustor a priority over general creditors).

to which the bankrupt has received a nondefeasible title.

■ We concede that this holding permits the state to evade the spirit of section 64 by multiplying grounds on which a seller may rescind a sale. Nothing in the Bankruptcy Act prevents a state from authorizing rescission for grounds other than those recognized at common law, such as fraud and misrepresentation. This loophole is a necessary result of Congress' attempt to promote simultaneously two conflicting interests: equal distribution of the bankrupt's estate among all general creditors and recognition of property interests created by the state. Section 67c was the result of congressional desire to restrict the state in creation of liens; only analogous legislation could effect a similar limitation on creation of grounds for rescission.

*Referee's Adoption of Proposed Findings*

The referee dismissed Lewis' petition for reclamation, finding that at no time before the date of bankruptcy had Telemart ceased to pay its debts in the ordinary course of business or been unable to pay its debts as they came due, nor had its liabilities exceeded its assets. Lewis attacks procedural irregularities in the referee's adoption of these findings.

■ The referee announced his decision shortly before his retirement. Without notifying Lewis, the referee requested the trustee's attorney to prepare proposed findings of fact and conclusions of law. Lewis was not invited to participate in the preparation of findings, nor given an opportunity to object to them before they were filed.

■ Local Rule 7(a) of the district court prohibits signing of findings prepared by counsel "unless opposing counsel shall have endorsed thereon an approval as to form, or shall have failed to serve and file with the Clerk, within five days after service of a copy thereof, as shown by endorsement of the original or by affidavit of service, a statement of objections to form and the grounds thereof." Local rules are promulgated primarily for the benefit of the district court itself, and their violation is not generally grounds for reversal. *Lance, Inc. v. Dewco Services, Inc.*, 422 F.2d 778, 784 (9th Cir. 1970). Although noncompliance with local rules is not in itself sufficient reason to reverse, noncompliance which prejudices the losing party may be. *See United States v. Simmons*, 476 F.2d 33, 35 (9th Cir. 1973).

■ The referee adopted the trustee's findings verbatim and without change. This procedure is not in itself improper, although findings so adopted are subject to closer scrutiny on review than those which are the result of the judge's independent work. *United States v. El Paso Natural Gas Co.*, 376 U.S. 651, 656–57 n. 4, 84 S.Ct. 1044, 12 L.Ed.2d 12 (1964); *Burgess & Associates, Inc. v. Klingensmith*, 487 F.2d 321, 324–25 (9th Cir. 1973). When a court follows such a procedure, however, the losing party may be prejudiced severely on appeal unless allowed to make known his objections to the proposed findings before final adoption. Compliance with the procedure prescribed in Local Rule 7(a) becomes a matter of simple judicial fairness in such circumstances.

The findings as adopted were adverse to Lewis on every contested issue. The circumstances under which they were adopted raise serious doubts concerning the integrity of the referee's fact-finding processes. Because of the court's violation of its rules under these circumstances, and in the context of the referee's apparent haste to wind up his affairs before retirement, we are reluctant to require Lewis to prove on appeal that these findings are clearly erroneous. Therefore, we reverse the judgment of the district court and remand for a new hearing on Lewis' petition for reclamation.

Reversed and remanded.

## ORDER

The panel as constituted in the above case has voted to deny the petition for rehearing. Treating the "petition for

rehearing en banc" as a petition with suggestion for rehearing en banc, they have rejected the suggestion for rehearing en banc.

The full court has been advised of the suggestion for rehearing en banc and no judge of the court has voted to grant rehearing en banc. F.R.App.P. 35(b).

The petition for rehearing is denied and the suggestion for rehearing en banc is rejected.