**In re CONTRACT INTERIORS, INC., a Michigan Corporation, Debtor.**

**B. BERGER CO., an Ohio Corporation, Plaintiff,**

v.

**CONTRACT INTERIORS, INC., a Michigan corporation, Defendant.**

Bankruptcy No. 81–00647–B.
Adv. No. 81–0351–B.

United States Bankruptcy Court,
E. D. Michigan.

Oct. 2, 1981.

---

Matz & Rubin by Robert Rubin, South-field, Mich., for plaintiff.

Miller, Canfield, Paddock & Stone, De-troit, Mich. by J. Scott Timmer, Birming-ham, Mich., for defendant.

## OPINION

GEORGE BRODY, Bankruptcy Judge.

This controversy involves the construction to be given to section 546(c) of the Bankruptcy Code, 11 U.S.C.A. § 546(c) (1979).

On December 24, 1980, B. Berger & Co. (the "plaintiff") shipped certain decorative goods to Contract Interiors, Inc. On February 6, 1981, Contract Interiors filed a petition for relief under chapter 11 of the Bankruptcy Code. The plaintiff made demand in writing for the return of the goods on February 20, 1981. When the defendant (the "debtor") failed to honor this request, the plaintiff instituted this action contending that it was induced to ship the goods in reliance upon a false financial statement submitted by the debtor and, therefore, it was entitled to reclaim them either by virtue of section 2–702 of the Uniform Commercial Code, M.S.A. § 19.2702 [M.C.L.A. § 440.2702], or based upon a theory of common-law fraud.

The parties agree that whether the plaintiff may prevail depends, at least initially, upon the construction to be given to section 546(c) of the Code.

"§ 546. *Limitations on avoiding powers*

. . . .

(c) The rights and powers of the trustee under sections 544(a), 545, 547, and 549 of this title are subject to any statutory right or common-law right of a seller, in the ordinary course of such seller's business, of goods to the debtor to reclaim such goods if the debtor has received such goods while insolvent, but—

(1) such a seller may not reclaim any such goods unless such seller demands in writing reclamation of such goods before ten days after receipt of such goods by the debtor;

(2) the court may deny reclamation to a seller with such a right of reclamation that has made such a demand only if court—

(A) grants the claim of such a seller priority as an administrative expense; or

(B) secured such claim by a lien.

Based upon section 546(c), the debtor argues that a seller may reclaim the goods he was induced to sell by fraudulent representation only if the seller complies with the requirements set forth in section 546(c) and, since the plaintiff did not make a written demand within ten days of the receipt of the goods by the debtor no right to reclaim exists. *In re Original Auto Parts Distributors*, 9 B.R. 469 (Bkrtcy.S.D.N.Y.1981); White and Summers, "The Uniform Commercial Code," § 24 (2d ed. 1980).

Counsel for the plaintiff, however, maintains that section 546 deals with the limitation of the trustee's avoiding powers and, therefore, subsection (c) of section 546 should be construed to mean that it merely prevents the trustee from relying upon sections 544(a), 546, 547 and 549 to defeat any statutory or common-law right of the seller to reclaim the goods sold in the ordinary course of business if the seller complies with the conditions set forth in section 546(c); but that a seller may still rely upon any statutory or common-law right that he may have to reclaim goods he has sold to a debtor even though he does not comply with the conditions set forth in section 546(c), but if a seller does so, the trustee may employ all of his avoiding powers to resist the seller's claim. In support of this construction of section 546(c), plaintiff relies on a law review article by Mann & Phillips analyzing section 546(c), entitled "Section 546(c) of the Bankruptcy Code: An Imperfect Resolution of the Conflict Between the Reclaiming Seller and the Bankruptcy Trustee," 54 Am.Bankr.L.J. 239 (1980).[1] In that article, the writers concede that section 546(c) may be construed to mean that it is the "exclusive and conclusive bankruptcy provision governing [a seller] reclamation rights," and that the failure to comply with section 546(c) precludes any recovery by the seller. The writers then state:

"Although this interpretation of section 546(c) cannot be dismissed peremptorily, it is unpersuasive for a number of reasons. First, section 546(c) does not expressly state the effect of a failure to comply with its requirements; nor does it directly state that consideration of the listed Reform Act sections is precluded in cases where the seller fails so to comply. Second, the only legislative history specifically addressing this point suggests that section 546(c) should not prevent the non-complying seller from contesting the trustee under other bankruptcy provisions. Third, the basic idea that seller reclamation rights outside of section 546(c)'s coverage are therefore ineffective in bankruptcy leads to entirely ludicrous results if extended to any degree. For example, this reasoning could deny the recovery to sellers exercising a right of stoppage in transit or even asserting a perfected Article 9 security interest. Finally, the view severely undermines any coherent reading of the Bankruptcy Reform Act as a whole, for it would dictate that the trustee's right to invalidate certain statutory liens or to assume the status of an ideal lien creditor is no longer dependent upon whether the reclamation right falls within the purview of these bankruptcy provisions but now is solely determined by the parameters of section 546(c)." 54 Am.Bankr.L.J., at 265–66.

Based upon this analysis, the writers suggest that

"... it is preferable to treat section 546(c) as providing the seller with a 'non-exclusive safe harbor' against a trustee proceeding under the Reform Act sections it lists. Thus, sellers complying with section 546(c) would be immune from attack under the listed sections, while those who did not comply would be free to defend themselves against the trustee on the merits as defined by the Reform Act section used by the trustee." *Id.*, at 267.

A brief discussion of the background leading to the adoption of section 546(c)

1. An expanded version of their thesis appeared in 33 Vander.L.Rev. 1 (1980) under the title, "The Reclaiming Seller Under the Bankruptcy Reform Act: Resolution or Renewal of an Old Conflict."

may be of aid in resolving this controversy. The common law recognized the right of a defrauded seller to rescind the contract of sale and to reclaim the goods sold. State law, however, differed as to what fact had to be established to give rise to this remedy. *Compare Carson v. Milcrow Motor Sales*, 303 Mich. 86, 89, 5 N.W.2d 665 (1942); *John Heidsik Co. v. Rechter*, 291 Mich. 708, 710, 289 N.W. 304 (1939); *Illinois Leather Co. v. Flynn*, 108 Mich. 91, 93, 65 N.W. 519 (1895); *Zucker v. Karpeles*, 88 Mich. 413, 434, 50 N.W. 373 (1891); *with Elbro Knitting Mills v. Schwartz*, 30 F.2d 10, 11 (6th Cir. 1929); *Weidman v. Phillips*, 159 Mich. 380, 386, 124 N.W. 40 (1909). To the extent that the state law recognized the remedy of reclamation on a given set of facts, the remedy was available as against a trustee in bankruptcy. *See,* e. g., *Manly v. Ohio Shoe Co.*, 25 F.2d 384 (4th Cir. 1928); *Jones v. H. M. Hobbie Grocery Co.*, 246 F. 431 (5th Cir. 1917); *In re Bentzel*, 161 F.Supp. 219 (D.Md.1958); *In re Monson*, 127 F.Supp. 625 (W.D.Ky.1955); *In re Stridacchio*, 107 F.Supp. 486 (D.N.J.1952); *In re Tate-Jones & Co.*, 85 F.Supp. 971 (W.D.Pa.1949); *In re Penn Table Co.*, 26 F.Supp. 887 (S.D.W.Va. 1939); *In re Perelstine*, 19 F.2d 408 (W.D. Pa.1927); *In re Krauss Co.*, 2 F.2d 999 (W.D.Tenn.1924). For whatever reason, the lack of state law uniformity did not cause any significant difficulties when the debtor filed a petition in bankruptcy.

The American Law Institute and the National Conference of Commissioners on Uniform State Laws proposed the first Official Draft of the Uniform Commercial Code in 1952. The Uniform Commercial Code was first adopted in Pennsylvania in 1954 and has since been adopted by every state except Louisiana. The Uniform Commercial Code became effective in Michigan in 1964. P.A. 174 (1962). Section 2–702(2) of the Uniform Commercial Code (14 M.S.A. § 19.-2702 [M.C.L.A. § 440.2702]) provides:

"Sec. 2–702. *Seller's Remedies on Discovery of Buyer's Insolvency.*

(1) Where the seller discovers the buyer to be insolvent he may refuse delivery except for cash including payment for all goods theretofore delivered and stop delivery under this Article (Section 2–705). (2) Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within ten days after the receipt, but if misrepresentation of solvency has been made to the particular seller in writing within three months before delivery the ten day limitation does not apply. Except as provided in this subsection the seller may not base a right to reclaim goods on the buyer's fraudulent or innocent misrepresentation of solvency or of intent to pay."

With the adoption of section 2–702 of the Uniform Commercial Code, relative stability was displaced by confusion and uncertainty. Attempts by sellers to reclaim goods from bankrupt estates was resisted by debtors in possession and trustees on various grounds. The areas of conflict have been summarized as follows:

"Trustees claimed that the right of reclamation was a statutory lien triggered by the debtor's insolvency and voidable by former section 67c(1)(A); that it was a priority in conflict with former section 64; or that it was subordinate to the rights of a judicial lien creditor under former section 70c." 4 Collier on Bankr. ¶ 546.04 (15th ed. 1980), at 546–9.

This conflict "produced a body of case law notable for its intricacy, its profession of doctrinal approaches, and its general incoherence." Mann & Phillips, *supra*, at 239.[2]

Section 546(c) was adopted in an attempt to resolve the problems created by section 2–702(2). The legislative history states that the purpose of section 546(c) is "to recognize, in part, the validity of section 2–702 of the Uniform Commercial Code which has generated much litigation, confusion, and divergent decisions in different circuits." H.R.Rep. No. 95–595, 95th Cong., 1st Sess.

2. The cases inducing this conflict and the scholarly comment they elicited are collected in the Mann & Phillips articles. *See also* Romans, "Seller's Right of Reclamation Under the Bankruptcy Code," 41 La.L.Rev. 1159 (1981).

372 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 87 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5873, 6328. Section 2–702(2) permits a seller to reclaim goods if the buyer received the goods while insolvent if the seller made a demand for the goods within ten days after the receipt of the goods by the buyer. If the buyer induced the seller to ship goods based upon a written misrepresentation of solvency and the goods were shipped within three months of such misrepresentation, the ten-day limitation does not apply. The legislative history accompanying section 546(c), when read in conjunction with section 546(c), makes it clear that the drafters intended to retain only that part of the section 2–702 which permits reclamation if demand was made for the return of the goods within ten days after receipt and to make this right to reclaim exclusive in order to put an end to the disruptive litigation engendered by section 2–702(2).[3] The purpose set forth in the legislative history can be given effect only if it is held that section 546(c) provides the exclusive remedy for a reclaiming seller.

The Mann & Phillips article, *supra*, relied upon by the plaintiff is a scholarly and comprehensive analysis of section 546(c). However, the arguments marshalled by them to support the contention that section 546(c) should not be given exclusive effect, are not persuasive.

**3.** This is actually the solution that was suggested by Weintraub & Edelman: "Seller's Right to Reclaim Property Under Section 2.702(2) of the Code Under the Bankruptcy Act: Fact or Fantasy," 32 Bus.Law 1165 (1977). This recommendation was based, in part, on the view that so limiting the right of seller to reclaim goods would eliminate costly, time-consuming litigation, enhance the likelihood of successful reorganization, and give relief in those cases in which there is an 'overwhelming aura of fraud' cases in which sellers were induced to deliver goods to a debtor on the eve of bankruptcy." Henson, "Reclamation Rights of a Seller Under § 2.702," 22 N.Y.L.F. 41, 49 (1975).

**4.** The proposed section 4–407 provided as follows:

"Sec. 4–407. *Right of Reclaiming Seller.*—A seller's right under state law to recover property sold upon subsequent discovery that

Admittedly, section 546(c) does not expressly state the effect of a failure to comply with its requirements, nor does it directly state that section 546(c) is an exclusive remedy for a seller who seeks to reclaim property. The mere failure to state the effect of noncompliance with section 546(c) does not, of itself, support the conclusion that section 546(c) is non-exclusive. Mann & Phillips' assertion that the only legislative history which addresses the exclusivity issue supports a "safe harbor" interpretation is based on a letter written to the Minority Counsel of the Committee on Improvement in the Judicial Machinery, United States Senate, by Professor Minahan of the University of Vermont Law School. The letter was written when the Senate was considering section 4–407, an earlier version of section 546(c)—a version essentially similar to that of section 546(c).[4] In the letter, Professor Minahan stated that the proposed section 4–407 should not be construed to provide the exclusive remedy for a defrauded seller but that whether a seller could reclaim property, if he did not comply with section 4–407,

"... should be left to the courts to decide in light of the particular circumstances of the case. Here the courts have discretion, absent notification within the ten-day period, to declare that the particular reclamation is a statutory lien or that it conflicts with the federal priorities. Section 4–407 merely gives a minimum of

buyer received the property while insolvent or at a time when buyer had ceased to pay his debts in the ordinary course of business or had an inability to pay his debts as they became due shall not be defeated upon the commencement of a case under this Act by or against the buyer as debtor because of anything contained in section 4–405 or 4–406 provided:
(1) debtor received the property on credit or payment by draft which was subsequently dishonored; and
(2) within ten days of debtor's written receipt of property seller made a written demand of debtor that property be returned; and
(3) at the time of debtor's receipt of the property seller had no actual knowledge of the contemplation of the filing of a petition under this Act by or against the debtor."

ten days worth of protection. Beyond the ten day period, the courts could go either way." Mann & Phillips, *supra*, at 265 n. 181.

Professor Minahan was not directly involved in the drafting of the Code. "[R]emarks other than by persons responsible for the preparation or the drafting of bill are entitled to little weight." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 203 n. 24, 96 S.Ct. 1375, 1386 n. 24, 47 L.Ed.2d 668 (1976).[5] The only pertinent legislative history that sheds light on the interpretation to be given to section 546(c) is that which accompanies section 546(c) and which, as previously stated, indicates that section 546(c) is to be given exclusive effect.

Mann & Phillips also maintain that if section 546(c) is held to be the exclusive remedy governing a seller's right to reclamation, it "could deny recovery to a seller exercising a right of stoppage in transit or asserting a perfected Article 9 security interest." A realistic reading of section 546(c) reveals that such fears are unjustified. A seller's right to stop goods in transit is governed by section 2–705 of the Uniform Commercial Code.[6] This right continues until the buyer has either actually or constructively received the goods. § 2–705(2). It is only when the debtor either has actual or constructive possession that a seller is compelled to rely on section 546(c). There is nothing in section 546(c) that remotely indicates that it deprives a seller of any remedy that he may have had under the Bankruptcy Act by virtue of section 2.705. Nor does section 546(c) impact on the right of a seller who has a valid security interest in goods received by a debtor. If a seller has a valid security interest, he has no need to rely upon section 546(c). Section 546(c) does not invalidate any such interest.

■ Finally, the authors contend that if section 546(c) means that a seller can reclaim goods only if he complies with the conditions set forth in section 546(c), it leads to "the absurd conclusion that the seller's recovery rights included by section 546(c) are *not* statutory liens or rights subordinate to a lien creditor so long as the seller complies with the section's procedural requirements, but *would* be so designated if the seller fails to comply." Inquiry as to whether a seller's right to reclaim is a statutory lien or a priority or a preference is no longer pertinent. It is no longer necessary to characterize the seller's right. A seller has a remedy if he complies with the condition set forth in section 546(c); he does not have a remedy if he does not so comply. This is the result that the drafters of the Code intended.

It is evident from the tenor of their comments that Mann & Phillips' basic concern is that to hold that section 546(c) provides more than a "safe harbor" is ill-advised. The court recognizes that to give exclusive effect to section 546(c) permits a debtor, who either actively or passively defrauds a seller of goods in the ordinary course of business, to insulate such fraudulent transactions unless the seller complies with the

---

**5.** Moreover, even if the remarks of Professor Minahan can be said to constitute part of the legislative history, they were made with respect to a prior draft and "[t]he more recent legislative history is usually more accurate than the older history in describing the Code." Klee, "Legislative History of the New Bankruptcy Law," *reprinted in* 2A Collier on Bankr., xxviii (15th ed. 1980).

**6.** Section 2.705 in pertinent part provides:
Sec. 2.705. *Stoppage of delivery in transit or otherwise; notice to bailee.*
"(1) The seller may stop delivery of goods in the possession of a carrier or other bailee when he discovers the buyer to be insolvent (section 2702) and may stop delivery of car-load, truckload, planeload or larger shipments of express or freight when the buyer repudiates or fails to make a payment due before delivery or if for any other reason the seller has a right to withhold or reclaim the goods.
(2) As against such buyer the seller may stop delivery until
(a) receipt of the goods by the buyer; or
(b) acknowledgment to the buyer by any bailee of the goods except a carrier that the bailee holds the goods for the buyer; or
(c) such acknowledgment to the buyer by a carrier by reshipment or as warehouseman;
· · · ."

conditions therein.[7] The court also recognizes that to limit the right of a defrauded seller to recover property only if he complies with the conditions set forth in section 546(c), for all practical purposes, makes the right meaningless. The event that generally triggers demand for reclamation is the filing of a petition in bankruptcy. Unless the filing of the petition is preceded by extensive publicity, a seller will ordinarily not be able to comply with the conditions set forth in section 546(c). A court, however, does not have the power to legislate; it must merely accept what the legislature has written. It is "not at liberty to revise while professing to construe." *Sun Printing and Publishing Assoc. v. Remington Paper and Power Co.*, 235 N.Y. 338, 346, 139 N.E. 140 (1923).[8]

For the foregoing reasons, the complaint is dismissed.

An appropriate order to be submitted.

---

**7.** Not only is a defrauded seller unable to exercise the right of reclamation unless he complies with the conditions set forth in § 546(c), but he is also precluded—if the debtor is a corporation—from bringing an action to except his debt from discharge. § 1141.

**8.** It should be noted that the limitation of a defrauded seller to recover property applies only to sales which have been made in the ordinary course of business. The right of a seller to reclaim property based upon allegations of fraud is not limited by § 546(c) if the transaction is not in the ordinary course of business.