**In re FABRIC BUYS, Debtor.**

**Bankruptcy No. 81 B 10790.
Adv. No. 81-5369-A.**

United States Bankruptcy Court,
S.D. New York.

Oct. 20, 1983.

Bertram Goldstein, New York City, for trustee.

O'Neill, DiManno & Kelly, New York City, for Nichimen.

## MEMORANDUM & ORDER

JOHN J. GALGAY, Bankruptcy Judge.

*Introduction*

By summons and complaint and pursuant to section 350 of the Bankruptcy Reform Act of 1978 ("Code"), the bankruptcy trustee of Fabric Buys of Jericho, Inc. ("Debtor"), seeks to recover an alleged preference of $99,460.00 from the defendant seller for goods stopped in transit. Sanders Gropper, as trustee for the debtor ("Trustee"), claims that the stoppage within 90 days of the time that the purchasing Debtor filed a

bankruptcy petition is a preferential transfer under Code section 547 of the Code because the seller's remedy is limited to reclamation under Code section 546(c). The defendant seller, Nichimen Co., Inc. ("Nichimen"), claims that the reclamation right granted in Code section 546(c) is not an exclusive seller's remedy and that the stoppage of goods in transit is not a preferential transfer for which the Trustee may recover. Both parties have moved for summary judgment. Having reviewed the evidence submitted by both parties and the applicable law, this Court determines that there is no genuine issue as to any material fact and that the seller, Nichimen, is entitled to judgment as a matter of law. Thus, the Trustee's motion for summary judgment is denied and Nichimen's motion is granted. *See* Bankruptcy Rule of Procedure 7056 (former Rule 756; F.R.Civ.P. 56).

*Facts*

The undisputed facts are as follows: Nichimen and the Debtor entered a written contract, dated February 3, 1981, under which Nichimen was to sell 61,449 yards of Japanese spun rayon muslin to the Debtor for a purchase price of about $99,997.00. The purchase price was quoted C.I.F. New York, i.e., the price included the cost of insurance and freight. *See* Uniform Commercial Code ("U.C.C.") § 2–320. New York law was to govern the transaction. The parties initially contemplated a credit sale. However, the contract provided that Nichimen reserved the right, upon notice to the Debtor at any time, to revise or revoke the credit terms of the sale or to withhold deliveries when, in the seller's opinion, reasonable grounds for insecurity arose as to the performance of the buyer.

The goods were delivered to a vessel in Japan for overseas transport under two bills of lading for 55 and 47 cartons each on February 18 and 20, 1981. Negotiable bills of lading were issued "to order" and transmitted to Nichimen through normal banking channels. The invoices were not endorsed or delivered to the Debtor, and the Debtor was not invoiced or billed for the goods.

During transport of the goods, William Iselin, the factor for Nichimen, discovered evidence of the Debtor's financial difficulty and, on March 1, 1981, advised Nichimen not to deliver the goods to the Debtor. On or before March 2, 1981, Michael Shutowick, Assistant Vice President and Assistant Credit Manager of William Iselin, notified Gary Moskowitz, Vice President of the Debtor, that the credit terms of the sale had been revoked and discussed with Mr. Moskowitz the possibility of cash payments. On March 12, 1981, Mr. Shutowick notified Mr. Moskowitz by telephone that there would be no delivery unless the goods were paid for with cash. Mr. Moskowitz responded that the Debtor could not pay cash and would prefer not to receive delivery on such conditions. On or about March 17, 1982, the seller presented the two bills of lading to the vessel, received the goods and placed them in a warehouse under its own name. In a letter dated March 18, 1981, William Iselin advised the debtor that it was in breach of contract, that the shipment would be stopped, and that the goods would be resold. The goods were later sold by William Iselin and released by Nichimen from the warehouse. The Debtor filed a petition in bankruptcy on April 10, 1981.

*Issues*

The issues presented to the court are: first, whether the reclamation right granted to the seller under Code section 546(c) is an exclusive seller's remedy precluding stoppage in transit; and second, if section 546(c) is not an exclusive remedy, does the stoppage of goods in transit nevertheless constitute a preferential transfer which the trustee can avoid?

*Discussion*

The remedies of a seller, upon discovery of the insolvency of a buyer, are codified in New York and other states by sections 2–702 and 2–705 of the Uniform Commercial Code ("UCC"). *See* N.Y.U.C.C. § 1–101 *et seq.* (McKinney 1983). These remedies include the right to stop goods in transit and the right to recover goods after delivery has been made. Prior to the enactment of the Bankruptcy Code, it was settled law that

the bankruptcy courts would recognize a seller's right to halt delivery upon discovery of a purchasing debtor's insolvency; hence to this court's knowledge, the seller's stoppage in transit remedy was never successfully challenged as a transfer subject to the trustee's avoidance powers. *See In re New York House Furnishing Goods Co.,* 169 F. 612 (C.C.A.1909); *In re Nicol,* 221 F. 82, 83 (W.D.N.Y.1915); 4A *Collier on Bankruptcy* ¶ 70.40 at 481 (14th ed. 1982). By contrast, the seller's right to reclaim goods already delivered to the debtor was often challenged as an avoidable transfer. *See In re PFA Farmers Market Association,* 583 F.2d 992 (8th Cir.1978); *In re Federal's Inc.,* 553 F.2d 509 (6th Cir.1977); *In re Telemart Enterprises, Inc.,* 524 F.2d 761 (9th Cir.1975) *cert. denied,* 424 U.S. 969, 96 S.Ct. 1466, 47 L.Ed.2d 736 (1976); *In re Peoples Marketing Corp.,* 347 F.2d 398 (7th Cir.1965); *In re Kravitz,* 278 F.2d 820 (3d Cir.1960); *In re Giltex, Inc.,* 17 U.C.C.Rep. 887 (S.D.N.Y. 1975); *In re Good Deal Super Markets, Inc.,* 384 F.Supp. 887 (D.N.J.1974).

Code section 546(c) resolves, to some extent, the controversy regarding reclamation and the trustee's avoiding powers. That provision, which adopts, in part, U.C.C. section 2–702, states:

The rights and powers of the trustee under sections 544(a), 545, 547, and 549 of this title are subject to any statutory right or common-law right of a seller, in the ordinary course of such seller's business, of goods to the debtor to reclaim such goods if the debtor has received such goods while insolvent, but—

(1) such a seller may not reclaim any such goods unless such seller demands in writing reclamation of such goods before ten days after receipt of such goods by the debtor. . . .

The trustee argues that section 546(c) is an exclusive seller's remedy in that it provides for protection of the reclamation right but does not explicitly allow stoppage in transit or any other recourse for the seller. However, in light of the history under prior bankruptcy law of reclamation and stoppage in transit, respectively, it seems clear

that Congress enacted section 546(c) to resolve the pre-Code conflict between reclamation and the trustee's avoiding powers rather than to negate the seller's other remedies besides reclamation rights. This court thus agrees with Judge Sand's statement in *In re National Sugar Refining Co.,* 27 B.R. 565 (S.D.N.Y.1983), that Congressional silence as to stoppage in transit "should be considered . . . more in the nature of an approval of the harmonious precedent in favor of the seller's right of stoppage rather than a disallowal by omission." *Id.* at 572. *See also In re Alla-Ohio Valley Coals, Inc.,* 22 B.R. 336, 339 (Bkrtcy.D.C.1982); *In re Contract Interiors, Inc.,* 14 B.R. 670, 675 (Bkrtcy.E.D.Mich.1981). Section 546(c) represents, at most, the exclusive method of reclamation under the Bankruptcy Code, not the exclusive seller's remedy. *See In re Koro Corp.,* 20 B.R. 241 (Bkrtcy.App. 1st Cir.1982); *In re Kentucky Flush Door Corp.,* 28 B.R. 808 (Bkrtcy.W.D.Ky.1983); *In re Ateco Equipment, Inc.,* 18 B.R. 917 (Bkrtcy.W.D.Pa.1982); *In re Contract Interiors,* 14 B.R. at 670.

Having determined that section 546(c) does not preclude a seller from stopping delivery of goods to a soon to be or presently bankrupt purchaser, the question remains whether such stoppage constitutes a preferential transfer. As defined by Code section 547, a preferential transfer is a transfer of the debtor's property to a creditor for on account of an antecedent debt owed by the debtor before the transfer, made while the debtor was insolvent or within 90 days of the filing of the petition, which enables the creditor to receive more than he would in liquidation, if no transfer had occurred, and such creditor received payment to the extent allowed under the Code. The parties dispute whether, in the instant case, there was a transfer of the debtor's property for or on account of an antecedent debt.

The Trustee contends that, under the C.I.F. contract between the parties, Nichimen's delivery of the goods to the vessel in Japan passed risk and title to the Debtor, and that the debt for the price of the goods arose at that time. *See* U.C.C. §§ 2–320,

2–401. The Trustee points out that while passage of title has no bearing on a seller's right to stop goods under the U.C.C., under the Bankruptcy Code, the concepts of title is of substantial import. The Trustee argues, that Nichimen's stoppage in transit effected a transfer of goods to which the Debtor held title. Hence, a transfer of the Debtor's property for or on account of an antecedent debt occurred. However, the Court finds that the Trustee's argument fails on several counts.

First, there was no transfer of property of the debtor. While delivery to the carrier, under U.C.C. section 2–320 did pass title to the Debtor, the Debtor's subsequent refusal to receive delivery caused title to revest in Nichimen. U.C.C. § 2–401(4). Thus, Nichimen held title to the goods when it recovered them in New York. *See In re Commodity Merchants, Inc.*, 538 F.2d 1260, 1263 (7th Cir.1976); *Amoco Pipeline Co. v. Admiral Crude Oil Corp.*, 490 F.2d 114, 117 (10th Cir.1974).

Second, there was no transfer for or on account of an antecedent debt. Any argument that a seller's recovery of goods constitutes such a transfer presupposes, at the very least, that the buyer has first received possession of the goods on credit. *See In re Weis Securities, Inc.*, 542 F.2d 840 (2d Cir. 1976); *In re Helms Veneer Corp.*, 287 F.Supp. 840, 843 (W.D.Va.1968); 3A Bender's U.C.C. Service, R. Duesenberg & L. King, *Sales and Bulk Transfers* § 13.03[4], at 13–17 to 13–18 (1966); Mann & Phillips, *The Reclaiming Seller Under the Bankruptcy Reform Act: Resolution or Renewal of an Old Conflict*, 33 Vand.L.Rev. 1, 39–40 (1980) ("Mann & Phillips").

Here, while Nichimen's delivery to the carrier did, under the C.I.F. terms of the contract, transfer title and risk of loss to the Debtor, there was no delivery of *possession* of the goods because Nichimen did not tender the required documents. *See* U.C.C. §§ 2–320(4) and Official Comment 1, 2–503(5), 2–504, 2–507(1). Moreover, the final "cash on delivery" terms of the agreement

preclude the possibility of the Debtor having any antecedent liability for the price of the goods when Nichimen retrieved them. *See* U.C.C. 2–507; Mann & Phillips, *supra* at 40.

Third, even if the revocation of credit terms was deemed ineffective Nichimen would still be able to stop the goods in transit without creating a preference.

██ The Court in *In re Telemart*, 524 F.2d 761 (9th Cir.1975) stated:

> receipt of goods on credit while insolvent is deemed a fraud on the creditor rendering the sale voidable. The sale is thus defective from its inception. Clearly no new security has been given for an antecedent debt; the "lien" [i.e., the reclamation right] attached at the instant the debt was created.

524 F.2d at 764; *see also In re PFA Farmers Market Association*, 583 F.2d 992, 1003 (8th Cir.1978). Telemart is consistent with the general bankruptcy principle that where a debtor's title to property is defeasible due to fraud or breach of trust, the true owner may rescind the transaction in which such act was committed and recover his property, and the return of such asset will not be deemed a preferential transfer. 4 *Collier on Bankruptcy* ¶ 547.19 at 547–67 (15th ed. 1982). While in *Telemart* the Ninth Circuit was addressing the seller's reclamation right under the Bankruptcy Act of 1898, clearly that court's analysis can be applied to the right to recover goods before delivery is complete, since stoppage in transit is essentially the reclamation right exercised at an earlier stage. *See* Kennedy, *The Interest of a Reclaiming Seller Under Article 2 of the Code*, 30 Bus.Law. 833, 840 (1975). Hence, using the *Telemart* reasoning, a buyer's attempt to receive goods on credit while insolvent renders the sale voidable and triggers the seller's right to stop the goods in transit. Moreover, the right to stop delivery comes into effect at the time of the creation of any debt, and the seller's recovery would relate back to

that time, negating the possibility of a transfer for or on account of an antecedent debt.

 Finally, the close relationship between reclamation and stoppage in transit indicates that section 546(c) itself contains the final reputation of the Trustee's position. For surely, if by section 546(c), Congress has ruled that a seller's recovery of goods received by an insolvent buyer is not, when proper written notice is given, a preferential transfer, then recovery of goods before they reach the buyer must be equally exempt. To hold otherwise would mean that a seller who can stop delivery should instead engage "in the rather absurd behavior of proceeding to deliver the goods ... and immediately thereafter issuing a written demand for reclamation...." *In re National Sugar Refining Co.,* 27 B.R. 565, 567, 571 (S.D.N.Y.1983). The Court finds it more logical and practical to assume that the reclamation remedy of section 546(c) includes, by implication, the prior right to stop goods in transit.

*Conclusion*

For the reasons set forth above, the Court holds that Nichimen is permitted a stoppage in transit under bankruptcy law and that Nichimen's stoppage of goods in transit did not constitute a voidable preference. Summary judgment for Nichimen is granted. The Trustee's summary judgment motion is denied.

It is so ordered.